950 P.2d 1184

**VALLEY MEDICAL SPECIALISTS, an Arizona professional corporation, Plaintiff–Appellant,**

v.

**Steven S. FARBER, D.O. and Susan H. Farber, husband and wife, Defendants–Appellees.**

Nos. 1 CA–CV 95–0520, 1 CA–CV 96–0533.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 30, 1997.

Review Granted Feb. 18, 1998.*

* McGregor, J., did not participate in the determination of this matter.

Brandes, Lane & Joffe, P.C. by Richard N. Brandes, David A. Joffe and LeslieAnn Haacke, Phoenix, for Appellant.

Bryan Cave LLP by Mark I. Harrison and Law Offices of George Vice, III by George Vice, III, Phoenix, for Appellees.

## OPINION

KLEINSCHMIDT, Presiding Judge.

This case concerns an agreement between a group of doctors restricting where a doctor who leaves the group may continue to practice medicine. The trial court found that the agreement was unenforceable. We disagree, and we reverse.

### FACTS AND PROCEDURAL HISTORY

In 1984, the Appellant, Valley Medical Specialists, hired Steven S. Farber, D.O., to work as an internist and pulmonologist. At that time, three other doctors were the shareholders, officers, and directors of the corporation. Three years later, when Farber became a shareholder, he and the other shareholders executed stock redemption and employment agreements. Several years after that, the departure of one of the doctors resulted in litigation, and, in an effort to avoid a similar problem in the future, the remaining shareholders adopted new stock and employment agreements. (*See* Appendix).

In September 1994, Farber, discontent for a number of reasons, withdrew from the corporation. Under the terms of the agreement as it had evolved by the time Farber left, a departing doctor could not practice medicine within five miles of any corporation office for a period of three years. Liquidated damages for a breach were set at forty percent of the departing doctor's gross receipts.

Farber began practicing from an office in Mesa that was within the restricted area, and he saw patients at hospitals within the restricted area. At least sixty people he treated at his new office were patients he had seen while he was with the corporation. He

also began competing with the corporation for patients from health care plans within the restricted area.

The corporation filed its complaint and application for an order to show cause regarding preliminary and permanent injunctions. It sought (1) a preliminary injunction and then a permanent injunction enjoining Farber from violating the restrictive covenant, (2) damages for breach of the employment agreement in the form of liquidated damages in the amount of forty percent of Farber's gross receipts after his resignation, and (3) damages for breach of fiduciary duty, conversion of patient files and confidential information, and intentional interference with contractual and/or business relations.

Following testimony and argument, the trial court denied the corporation's request for a preliminary injunction because it believed that the restrictive covenant violated public policy. Alternatively, the trial court concluded that if the covenant did not violate public policy, it was unenforceable because it was too broad, finding that no restrictive covenant over six months would be reasonable. The court also found that a five-mile radius from any corporation office was unreasonable because there were three offices and the restricted area encompassed about 235 square miles; the restriction was unreasonable because it did not provide an exception for provision of emergency medical aid and the restriction was overbroad because it was not limited to the practice of pulmonology.

Initially the court permitted the corporation to proceed with the case on the issue of liquidated damages or any other damages to which it might be entitled. The corporation appealed from the judgment denying its request for a preliminary and permanent injunction. Farber then moved to dismiss the corporation's claims for breach of contract, breach of fiduciary duty, conversion, and intentional interference with contractual and/or business relations. The trial court granted the motion as to claims for damages based on violations of the restrictive agreement. Because it had previously ruled that the restric-

tive agreement was invalid, the court reasoned that no damages could be awarded based on its breach. The court declined to dismiss claims for breach of fiduciary duty and interference with contractual and business relations, and amended claims for breach of a car insurance contract, abuse of process, and for a declaration concerning stock buy-out provisions.

In a judgment containing finality language pursuant to Rule 54(b), Arizona Rules of Civil Procedure, the court dismissed the claims for permanent injunction, breach of contract/liquidated damages/actual damages, conversion, and unjust enrichment. The corporation appealed from the judgment. Upon a joint motion of the parties, the two appeals were consolidated.

## THE RESTRICTIVE COVENANT SHOULD NOT HAVE BEEN STRICTLY CONSTRUED AGAINST THE CORPORATION

When seeking to enforce a restrictive covenant, the burden is on the employer to prove the extent of its protectable interest. *Bryceland v. Northey*, 160 Ariz. 213, 216, 772 P.2d 36, 39 (App.1989). We have enforced a restrictive covenant similar to the one in issue here when it was no broader than necessary to protect the employer's legitimate business interest. *Phoenix Orthopaedic Surgeons, Ltd. v. Peairs*, 164 Ariz. 54, 60, 790 P.2d 752, 758 (App.1989).

Restrictive covenants that tend to prevent an employee from pursuing a similar vocation after termination of employment are disfavored and are strictly construed against the employer. Courts are more lenient in enforcing similar covenants given in relation to the sales of businesses because of the need to ensure that goodwill is effectively transferred. *Bryceland*, 160 Ariz. at 216, 772 P.2d at 39.[1]

The corporation argues that Farber's departure triggered a buy-out provision that is analogous to the sale of a business, so the non-compete provision should not be strictly

---

1. The trial court believed that *Bryceland* and *Peairs* are in conflict. Given the differences in breadth of the restrictive covenants and the nature of the employment agreement which we discuss in detail in this opinion, we do not believe the two cases conflict.

construed against it. A buy-out situation is not completely analogous to the sale of a business. The scrutiny afforded a restrictive covenant involved in a shareholder buy-out agreement falls somewhere between the scrutiny applied to a covenant affecting a terminated employee with no ownership interest in the business and that applied to a covenant involved in the sale of a business.

The Supreme Court of Georgia in *Rash v. Toccoa Clinic Medical Associates*, 253 Ga. 322, 320 S.E.2d 170 (1984), considered whether a covenant not to compete in a partnership agreement was enforceable against a physician who resigned from the partnership, stating:

> We are dealing here not with an employment contract but with a partnership agreement. Although it does not appear that the appellate courts of this state have had occasion to clearly distinguish between the two types of agreements, there are obvious differences. In a partnership agreement such as the one here, as opposed to an employment agreement, the consideration flows equally among the contracting parties. For .example, when an employee agrees to subject himself to possible future restrictions, he does so in exchange for the opportunity to have the job. He really gets nothing other than the opportunity to work in exchange for giving up ·this aspect of his freedom. ` On the other hand, here a partner has not only restricted himself, but he has also exacted from each of the other contracting parties a like restriction.
>
> . . . .
>
> The next distinction between employment agreements and partnership agreements is that it is generally true in the employer/employee relationship that the employee goes into a transaction such as this at a great bargaining disadvantage. Such would not be expected to be the case in a professional partnership arrangement. . . .

*Id.*, 320 S.E.2d at 172–73.

The evidence shows that Arizona medical professional corporations commonly have restrictive covenants in their employment agreements as part of their business plans.

Because those plans include buy-out provisions, the restrictive covenants help maintain the value of the practice when a shareholder employee leaves so that the corporation does not suffer a loss in revenue that would, among other things, diminish its ability to pay for the departed physician's stock. In addition, the valuation of the business on which the buy-out price is based generally would include a goodwill value that would be compromised if the physician who leaves takes patients from the practice.

In light of these considerations, we conclude that the trial court erred in regarding Farber as solely an employee comparable in status to the employees of the mobile disc jockey business in *Bryceland v. Northey*, 160 Ariz. 213, 772 P.2d 36 (App.1989). Because Farber was a shareholder as well as an employee, the court should not have applied the strict standard of construction disfavoring enforcement of the restrictive covenant.

### THE CORPORATION HAS A PROTECTABLE INTEREST

■ The corporation also argues that it is entitled to protect its patient pool and the referral sources it has developed. We agree. An employer has a protectable interest in preserving customer or patient relationships when an employee leaves. *Bryceland*, 160 Ariz. at 216, 772 P.2d at 39. *See Karlin v. Weinberg*, 77 N.J. 408, 390 A.2d 1161, 1166 (1978) (physician employer has legitimate interest in protection of patient relationships); *Pollack v. Calimag*, 157 Wis.2d 222, 458 N.W.2d 591, 599 (App.1990) (protection of a business' stock of customers is legitimate interest of employer). In addition, the continued success of a medical practice that is dependent upon patient referrals is a legitimate protectable interest; a specialty practice that largely depends on patient referrals from other doctors has an interest in protecting its established source of referrals. *Medical Specialists, Inc. v. Sleweon*, 652 N.E.2d 517, 523, 524 (Ind.App.1995). Accordingly, the corporation established that it had a protectable interest in its current patients and referral sources.

## THE RESTRICTION WAS REASONABLE AS TO THE DOCTOR

■ The second matter to be considered when determining the validity and enforceability of a restrictive covenant is whether it is unreasonably restrictive of the rights of the employee. In this case, conflicting evidence was introduced concerning Farber's ability to earn a living as a pulmonologist if the covenant were enforced. Most of this evidence related to matters of opinion, and because the enforceability of the covenant is to be decided as a matter of law, we consider whether on its face it is unreasonably restrictive of Farber's rights to his employment.

The corporation had one office in Phoenix, one in Scottsdale, and one in Mesa. The covenant restricts Farber from practicing within a five-mile radius of each of those offices for three years after resigning. This restriction is very similar to the one in *Peairs*, which restricted a doctor from practicing orthopedic medicine and surgery within a five-mile radius of each of three offices for three years. In *Peairs*, the three offices were all in northwest Phoenix rather than in three different cities, so that the restricted area was not as large as the area affecting Farber. The *Peairs* court noted, however, that at least eight other hospitals and outpatient surgical facilities were located in the metropolitan area outside the restricted areas and thus the doctor was not unduly restricted from working in his chosen occupation.

Although Farber and his expert testified that they did not believe Farber could maintain an adequate practice outside the restricted areas, the evidence showed that Farber had privileges at eight of the eleven hospitals in the Phoenix area that were located outside that area. While employed with the corporation, he had used all eight of those hospitals. In the first several months after he left the corporation, he had seen patients at five of them. About sixty-seven percent of pulmonary disease physicians were located within the restricted area while about thirty-three percent were located outside it. While the enforcement of the covenant will no doubt have an adverse effect on Farber's practice, such will not amount to an "undue hardship" that would prevent enforcement of the covenant. *See Karlin,* 390 A.2d at 1166.

Farber also argues that the covenant is unreasonably restrictive because it prevents him from seeing his AIDS patients at the infectious disease unit at Desert Samaritan Hospital, precludes his performance of brachytherapy at hospitals with the required equipment, and prevents him from seeing his patients on an emergency basis within the restricted areas. The corporation, however, has stipulated on the record that his treatment of HIV positive and AIDS patients and performance of brachytherapy are not covered by the restrictive covenant because they do not involve competition with the corporation and thus may be done at hospitals within the restricted area.

■ The trial court was convinced that Farber was not permitted to perform emergency procedures in the restricted area. The restrictive covenant, however, has a severability provision. The trial court could modify the covenant to allow Farber to provide emergency services necessary for the welfare of the public within the restricted area. *See Peairs,* 164 Ariz. at 61, 790 P.2d at 759.

## THE AGREEMENT IS REASONABLE AS TO TIME AND AREA

■ The question of reasonableness of the area and duration of the restriction relates to what is necessary to protect the corporation's interest but it overlaps with the factors bearing on its effect on the doctor. Restrictions similar to those sought to be imposed here were found to be reasonable in *Peairs*. The restrictive covenant would not prevent Farber from seeing former patients as long as he was practicing outside the restricted areas. Although those patients might have to travel farther to his office than before, given the size of the Phoenix metropolitan area, the five-mile-radius restricted area is not unreasonable and would not prevent former patients from traveling to his new office.

■ As to the duration of the restriction, various witnesses testified that it would take

Farber's replacement from three to five years to develop his pulmonary practice referral sources to the level they were when Farber resigned. Farber himself estimated that it would take one to five years for his replacement to develop such resources. The trial court believed that a six-month period was reasonable because pulmonology patients with chronic conditions would see their physicians at least once within each six-month period. This assumes that all the pulmonary patients would want to stay with the corporation rather than leave with Farber. Nor did the court appear to consider the time necessary to replace referral sources. The three-year competition restriction is not unreasonable under the circumstances.

### THE AGREEMENT DOES NOT VIOLATE PUBLIC POLICY

Farber argues that the restrictive covenant violates public policy because it unethically restricts a patient's right to choose a doctor and because it interferes with a doctor's treatment of patients suffering from chronic disease. Farber takes too broad a view of public policy.

In *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 279 (Ind.1983), the Supreme Court of Indiana discussed the impact of public policy on such restrictive covenants and emphasized that courts must not unnecessarily restrict the freedom of contract.

One consideration in the policy analysis is whether enforcement of the restrictive covenant would result in a shortage of doctors in the restricted area. If so, the covenant should not be enforced. *Karlin*, 390 A.2d at 1170. There is no suggestion in the record that the availability of pulmonologists in the restricted area will be inadequate if Farber is precluded from practicing there.

Another public policy consideration is whether the geographical dimensions of the covenant make it impossible, as a practical matter, for patients to continue treatment with the doctor of their choice. *Karlin*, 390 A.2d at 1170. The five-mile radius of the covenant would not make it impossible for Farber's existing patients to continue to see him. *See Rash*, 320 S.E.2d at 173–74 (restrictive covenant enforceable because doctor could serve former patients if treatment took place outside twenty-five-mile limit).

### CONCLUSION

We remand this case to the trial court for further proceedings in light of our holding that the restrictive covenant is not void. Whether, given the passage of time, it would be inequitable to enjoin Farber from practicing in the restricted area for a period of three years is an issue which the parties have not addressed. The trial court may consider and resolve that issue. Assuming that the trial court finds that the covenant is enforceable, it must resolve all of the damage issues presented. Among these is whether the liquidated damage provision is an unenforceable penalty. *See Davis v. Tucson Arizona Boys Choir Soc.*, 137 Ariz. 228, 233, 669 P.2d 1005, 1010 (App.1983). The parties apparently did not develop the record in this respect and have only mentioned it in passing in the briefs. The court must also resolve Farber's claims, based on allegations that we have had no need to discuss, that the corporation cannot enforce the covenant because it breached its agreement with him.

The corporation has requested an award of attorneys' fees incurred on appeal pursuant to A.R.S. section 12–341.01. We deny the request without prejudice to reurge it to the trial court following the resolution of all the contested issues.

LANKFORD and FIDEL, JJ., concur.

### APPENDIX

The restrictive covenant contained in paragraph 17 of the employment agreement provided in part:

> The parties recognize that the duties to be rendered under the terms of this Agreement by the Employee are special, unique and of an extraordinary character. The Employee, in consideration of the compensation to be paid to him pursuant to the terms of this Agreement, expressly agrees to the following restrictive covenants:

(a) The Employee shall not, directly or indirectly:

(i) Request any present or future patients of the Employer to curtail or cancel their professional affiliation with the Employer;

(ii) Either separately, jointly, or in association with others, establish, engage in, or become interested in, as an employee, owner, partner, shareholder or otherwise, or furnish any information to, work for, or assist in any manner, anyone competing with, or who may compete with the Employer in the practice of medicine.

(iii) Disclose the identity of any past, present or future patients of the Employer to any other person, firm or corporation engaged in a medical practice the same as, similar to or in general competition with the medical services provided by the Employer.

(iv) Either separately, jointly or in association with others provide medical care or medical assistance for any person or persons who were patients or Employer during the period that Employee was in the hire of Employer.

. . . .

(d) The restrictive covenants set forth herein shall continue during the term of this Agreement and for a period of three (3) years after the date of termination, for any reason, of this Agreement. The restrictive covenants set forth herein shall be binding upon the Employee in that geographical area encompassed within the boundaries measured by a five (5) mile radius of any office maintained or utilized by Employer at the time of execution of the Agreement or at any time thereafter.

(e) The Employee agrees that a violation on his part of any covenant set forth in this Paragraph 17 will cause such damage to the Employer as will be irreparable and for that reason, that Employee further agrees that the Employer shall be entitled, as a matter of right, and upon notice as provided in Paragraph 20 hereof, to an injunction from any court of competent jurisdiction, restraining any further violation of said covenants by Employee, his corporation, employees, partners or agents. Such right to injunctive remedies shall be in addition to and cumulative with any other rights and remedies the Employer may have pursuant to this Agreement or law, including, specifically with regard to the covenants set. forth in subparagraph 17(a) above, the recovery of liquidated damages equal to forty percent (40%) of the gross receipts received for medical services provided by the Employee, or any employee, associate, partner, or corporation of the Employee during the term of this Agreement and for a period of three (3) years after the date of termination, for any reason, of this Agreement. The Employee expressly acknowledges and agrees that the covenants and agreements contained in this Paragraph 17 are minimum and reasonable in scope and are necessary to protect the legitimate interest of the Employer and its goodwill.