982 P.2d 1277

**VALLEY MEDICAL SPECIALISTS, an Arizona professional corporation, Plaintiff–Appellant,**

v.

**Steven S. FARBER, D.O. and Susan H. Farber, husband and wife, Defendants–Appellees.**

No. CV–97–0488–PR.

Supreme Court of Arizona, En Banc.

June 18, 1999.

364

Lane Campbell & Nach, P.C. By: Richard N. Brandes and Renaud Cook & Drury By: LeslieAnn Haacke and Bell & O'Connor, P.C., Phoenix By: John Daniel Campbell III and David A. Joffe, Scottsdale, for Plaintiff–Appellant.

Snell & Wilmer By: Lonnie J. Williams, Jr. and Bryan Cave, L.L.P. By: Mark I. Harrison, Rodney W. Ott, Phoenix, for Defendants–Appellees.

## OPINION

FELDMAN, Justice.

¶1 We granted review to determine whether the restrictive covenant between Dr. Steven Farber and Valley Medical Specialists is enforceable. We hold that it is not. Public policy concerns in this case outweigh Valley Medical's protectable interests in enforcing the agreement. We thus vacate the court of appeals' opinion, affirm the trial court's judgment, and remand to the court of appeals to resolve any remaining issues. We have jurisdiction pursuant to Arizona Constitution article VI, § 5(3) and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

¶2 In 1985, Valley Medical Specialists ("VMS"), a professional corporation, hired Steven S. Farber, D.O., an internist and pulmonologist who, among other things, treated

AIDS and HIV-positive patients and performed brachytherapy—a procedure that radiates the inside of the lung in lung cancer patients. Brachytherapy can only be performed at certain hospitals that have the necessary equipment. A few years after joining VMS, Dr. Farber became a shareholder and subsequently a minority officer and director. In 1991, the three directors, including Dr. Farber, entered into new stock and employment agreements. The employment agreement contained a restrictive covenant, the scope of which was amended over time.

¶ 3 In 1994, Dr. Farber left VMS and began practicing within the area defined by the restrictive covenant, which at that time read as follows:

The parties recognize that the duties to be rendered under the terms of this Agreement by the Employee are special, unique and of an extraordinary character. The Employee, in consideration of the compensation to be paid to him pursuant to the terms of this Agreement, expressly agrees to the following restrictive covenants:

(a) The Employee shall not, directly or indirectly:

(i) Request any present or future patients of the Employer to curtail or cancel their professional affiliation with the Employer;

(ii) Either separately, jointly, or in association with others, establish, engage in, or become interested in, as an employee, owner, partner, shareholder or otherwise, or furnish any information to, work for, or assist in any manner, anyone competing with, or who may compete with the Employer in the practice of medicine.

(iii) Disclose the identity of any past, present or future patients of the Employer to any other person, firm or corporation engaged in a medical practice the same as, similar to or in general competition with the medical services provided by the Employer.

(iv) Either separately, jointly or in association with others provide medical care or medical assistance for any person or persons who were patients or [sic] Employer during the period that Employee was in the hire of Employer.

\* \* \*

(d) *The restrictive covenants set forth herein shall continue during the term of this Agreement and for a period of three (3) years after the date of termination, for any reason, of this Agreement. The restrictive covenants set forth herein shall be binding upon the Employee in that geographical area encompassed within the boundaries measured by a five (5) mile radius of any office maintained or utilized by Employer at the time of execution of the Agreement or at any time thereafter.*

(e) The Employee agrees that a violation on his part of any covenant set forth in this Paragraph 17 will cause such damage to the Employer as will be irreparable and for that reason, that Employee further agrees that the Employer shall be entitled, as a matter of right, and upon notice as provided in Paragraph 20 hereof, to an injunction from any court of competent jurisdiction, restraining any further violation of said covenants by Employee, his corporation, employees, partners or agents. Such right to injunctive remedies shall be in addition to and cumulative with any other rights and remedies the Employer may have pursuant to this Agreement or law, including, specifically with regard to the covenants set forth in subparagraph 17(a) above, the recovery of liquidated damages equal to forty percent (40%) of the gross receipts received for medical services provided by the Employee, or any employee, associate, partner, or corporation of the Employee during the term of this Agreement and for a period of three (3) years after the date of termination, for any reason, of this Agreement. The Employee expressly acknowledges and agrees that the covenants and agreement contained in

this Paragraph 17 are minimum and reasonable in scope and are necessary to protect the legitimate interest of the Employer and its goodwill.

(Emphasis added.)

¶ 4   VMS filed a complaint against Dr. Farber seeking (1) preliminary and permanent injunctions enjoining Dr. Farber from violating the restrictive covenant, (2) liquidated damages for breach of the employment agreement, and (3) damages for breach of fiduciary duty, conversion of patient files and confidential information, and intentional interference with contractual and/or business relations.

¶ 5   Following six days of testimony and argument, the trial court denied VMS's request for a preliminary injunction, finding that the restrictive covenant violated public policy or, alternatively, ·was unenforceable because it was too broad.  Specifically, the court found that:  any covenant over six months would be unreasonable; the five-mile radius from each of the three VMS offices was unreasonable because it covered a total of 235 square miles; and the restriction was unreasonable because it did not provide an exception for emergency medical aid and was not limited to pulmonology.

¶ 6   The court of appeals reversed, concluding that a modified covenant was reasonable.  *Valley Med. Specialists v. Farber,* 190 Ariz. 563, 950 P.2d 1184 (App.1997).  The court noted that there were eight hospitals outside the restricted area where Dr. Farber could practice.  *Id.* at 567, 950 P.2d at 1188.  Although the covenant made no exceptions for emergency medicine, the court held that the severability clause permitted the trial court to modify the covenant so Dr. Farber could provide emergency services within the restricted area.  *Id.* (citing *Phoenix Orthopaedic Surgeons, Ltd. v. Peairs ("Peairs"),* 164 Ariz. 54, 61, 790 P.2d 752, 759 (App. 1989)).  Moreover, VMS was allowed to stipulate that Dr. Farber could perform brachytherapy and treat AIDS and HIV patients within the restricted area, again even though the covenant contained no such exceptions.  *Valley Med. Specialists,* 190 Ariz. at 567, 950 P.2d at 1188.

¶ 7   The court of appeals found the restriction, when so modified, reasonable as to time and place.  Although non-emergency patients might be required to travel further to see Dr. Farber, they could continue to see him if they were willing to drive that far.  *Id.* at 567–68, 950 P.2d at 1188–89.  Three years was reasonable because the record contained testimony that it might take Dr. Farber's replacement three to five years to develop his pulmonary practice referral sources to the level they were when Dr. Farber resigned.  *Id.*

¶ 8   The court found that the restrictive covenant did not violate public policy, believing that courts must not unnecessarily restrict the freedom of contract.  *Id.* at 568, 950 P.2d at 1189.  Moreover, the record was void of any evidence that the availability of pulmonologists in the restricted area would be inadequate without Dr. Farber.  *Id.*

## DISCUSSION

### A.   Standard of review

¶ 9   There is some dispute over what standard of review should be applied to the trial court's decision.  Dr. Farber contends the court of appeals usurped the trial court's discretion by applying a *de novo* standard.  Granting or denying a preliminary injunction is within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of that discretion.  *Financial Assocs., Inc. v. Hub Properties, Inc.,* 143 Ariz. 543, 545, 694 P.2d 831, 833 (App.1984).  The trial judge's factual findings are reviewed on a clearly erroneous standard.  *See* Rule 52(a), Ariz.R.Civ.P.

¶ 10   VMS contends, however, that the court of appeals correctly applied a *de novo* standard.  Mixed findings of fact and law are reviewed *de novo.*  Indeed, some courts have held that the determination of whether a restrictive covenant is reasonable is a question of law.  *See, e.g., Gann v. Morris,* 122 Ariz. 517, 518, 596 P.2d 43, 44 (App.1979); *Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 280 (Ind.1983).

¶ 11   It is true that the ultimate question of reasonableness is a question of

law. But reasonableness is a fact-intensive inquiry that depends on weighing the totality of the circumstances. *Bryceland v. Northey,* 160 Ariz. 213, 217, 772 P.2d 36, 40 (App.1989) ("Each case hinges on its own particular facts."); *Olliver/Pilcher Ins. v. Daniels,* 148 Ariz. 530, 532, 715 P.2d 1218, 1220 (1986). Thus, we will give substantial deference both to the trial court's findings of fact and its application of law to fact, reviewing the former on a clearly erroneous standard and the latter for abuse of discretion.

**B. History of restrictive covenants**

■ ¶ 12 A brief reference to basic principles is appropriate. Historically, covenants not to compete were viewed as restraints of trade and were invalid at common law. *Ohio Urology, Inc. v. Poll,* 72 Ohio App.3d 446, 594 N.E.2d 1027, 1031 (1991); *see generally* Harlan M. Blake, *Employee Agreements not to Compete,* 73 Harv. L. Rev. 625 (1960); Serena L. Kafker, *Golden Handcuffs: Enforceability of Noncompetition Clauses in Professional Partnership Agreements of Accountants, Physicians, and Attorneys,* 31 Am. Bus. L J. 31, 33 (1993). Eventually, ancillary restraints, such as those incident to employment or partnership agreements, were enforced under the rule of reason. *See* Restatement (Second) of Contracts § 188 (hereinafter "Restatement"). Given the public interest in doctor-patient relationships, the validity of restrictive covenants between physicians was carefully examined long ago in *Mandeville v. Harman:*

> The rule is not that a limited restraint is good, but that it may be good. It is valid when the restraint is reasonable; and the restraint is reasonable when it imposes no shackle upon the one party which is not beneficial to the other.

> The authorities are uniform that such contracts are valid when the restraint they impose is reasonable, and the test to be applied, ... is this: To consider whether the restraint is such only as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interest of the public. Whatever restraint is larger than the necessary protection of the party can

be of no benefit to either; it can only be oppressive, and, if oppressive, it is, in the eye of the law, unreasonable and void, on the ground of public policy, as being injurious to the interests of the public.

42 N.J. Eq. 185, 7 A. 37, 38–39 (1886) (citations omitted); *see also Karlin v. Weinberg,* 77 N.J. 408, 390 A.2d 1161, 1165 (1978). To be enforced, the restriction must do more than simply prohibit fair competition by the employee. *Bryceland,* 160 Ariz. at 216, 772 P.2d at 39. In other words, a covenant not to compete is invalid unless it protects some legitimate interest beyond the employer's desire to protect itself from competition. *Amex Distrib. Co. v. Mascari,* 150 Ariz. 510, 518, 724 P.2d 596, 604 (App.1986). The legitimate purpose of post-employment restraints is "to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment." Blake, *supra,* 73 Harv. L. Rev. at 647. Despite the freedom to contract, the law does not favor restrictive covenants. *Ohio Urology, Inc.,* 594 N.E.2d at 1031. This disfavor is particularly strong concerning such covenants among physicians because the practice of medicine affects the public to a much greater extent. *Id.* In fact, "[f]or the past 60 years, the American Medical Association (AMA) has consistently taken the position that noncompetition agreements between physicians impact negatively on patient care." Paula Berg, *Judicial Enforcement of Covenants not to Compete Between Physicians: Protecting Doctors' Interests at Patients' Expense,* 45 Rutgers L. Rev. 1, 6 (1992).

**C. Level of scrutiny—public policy considerations**

■ ¶ 13 We first address the level of scrutiny that should be afforded to this restrictive covenant. Dr. Farber argues that this contract is simply an employer-employee agreement and thus the restrictive covenant should be strictly construed against the employer. *See Amex Distrib. Co.,* 150 Ariz. at 514, 724 P.2d at 600 (noting employer-employee restrictive covenants are disfavored and strictly construed against the employer). This was the approach taken by

the trial court. VMS contends that this is more akin to the sale of a business; thus, the noncompete provision should not be strictly construed against it. *See id.* (courts more lenient in enforcing restrictive covenants connected to sale of business because of need to effectively transfer goodwill). Finding the agreement here not on all fours with either approach, the court of appeals applied a standard "somewhere between" the two. *Valley Med. Specialists,* 190 Ariz. at 566, 950 P.2d at 1187.

¶ 14 Although this agreement is between partners, it is more analogous to an employer-employee agreement than a sale of a business. *See* RESTATEMENT § 188 cmt. h ("A rule similar to that applicable to an employee or agent applies to a partner who makes a promise not to compete that is ancillary to the partnership agreement or to an agreement by which he disposes of his partnership interest."). Many of the concerns present in the sale of a business are not present or are reduced where, as here, a physician leaves a medical group, even when that physician is a partner. When a business is sold, the value of that business's goodwill usually figures significantly into the purchase price. The buyer therefore deserves some protection from competition from the former owner. *See* Kafker, *supra,* 31 AM. BUS. L.J. at 33. A restraint accompanying the sale of a business is necessary for the buyer to get the full goodwill value for which it has paid. Blake, *supra,* 73 HARV. L. REV. at 647.

¶ 15 It is true that in this case, unlike typical employer-employee agreements, Dr. Farber may not have been at a bargaining disadvantage, which is one of the reasons such restrictive covenants are strictly construed. *See, e.g., Rash v. Toccoa Clinic Med. Assocs.,* 253 Ga. 322, 320 S.E.2d 170, 172–73 (1984). Unequal bargaining power may be a factor to consider when examining the hardship on the departing employee. But in cases involving the professions, public policy concerns may outweigh any protectable interest the remaining firm members may have. Thus, this case does not turn on the hardship to Dr. Farber.

¶ 16 By restricting a physician's practice of medicine, this covenant involves strong public policy implications and must be closely scrutinized. *See Peairs,* 164 Ariz. at 60, 790 P.2d at 758; *Ohio Urology, Inc.,* 594 N.E.2d at 1032 (restrictive covenant in medical context "strictly construed in favor of professional mobility and access to medical care and facilities"). Although stopping short of banning restrictive covenants between physicians, the American Medical Association ("AMA") "discourages" such covenants, finding they are not in the public interest.

> The Council on Ethical and Judicial Affairs discourages any agreement between physicians which restricts the right of a physician to practice medicine for a specified period of time or in a specified area upon termination of employment or a partnership or a corporate agreement. Such restrictive agreements are not in the public interest.

1989 Current Opinions of the Council on Ethical and Judicial Affairs, Section 9.02 (hereinafter "AMA Opinions"). In addition, the AMA recognizes that free choice of doctors is the right of every patient, and free competition among physicians is a prerequisite of optimal care and ethical practice. *See* AMA Opinions, Section 9.06; *Ohio Urology, Inc.,* 594 N.E.2d at 1030.

¶ 17 For similar reasons, restrictive covenants are prohibited between attorneys. *See Dwyer v. Jung,* 133 N.J.Super. 343, 336 A.2d 498, 501 (Ct. Ch. Div.), *aff'd,* 137 N.J.Super. 135, 348 A.2d 208 (App.Div.1975); *Cohen v. Lord, Day & Lord,* 75 N.Y.2d 95, 551 N.Y.S.2d 157, 550 N.E.2d 410, 410–11 (1989). In 1969, the American Bar Association adopted a code of professional conduct that contained a disciplinary rule prohibiting restrictive covenants between attorneys. *See* Berg, *supra,* 45 RUTGERS L. REV. at 37. The ethical rules adopted by this court provide:

> A lawyer shall not participate in offering or making:
>
> (a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship except an agreement concerning benefits upon retirement; or
>
> (b) an agreement in which a restriction on the lawyers right to practice is part of

the settlement of a controversy between private parties.

Ethical Rule ("ER") 5.6, Arizona Rules of Professional Conduct, Rule 42, Ariz.R.Sup. Ct.

■ ¶ 18 Restrictive covenants between lawyers limit not only their professional autonomy but also the client's freedom to choose a lawyer. *See* ER 5.6 cmt. We do not, of course, enact ethical rules for the medical profession, but given the view of the AMA to which we have previously alluded, we believe the principle behind prohibiting restrictive covenants in the legal profession is relevant.

> Commercial standards may not be used to evaluate the reasonableness of lawyer restrictive covenants. Strong public policy considerations preclude their applicability. In that sense lawyer restrictions are injurious to the public interest. A client is always entitled to be represented by counsel of his own choosing. The attorney-client relationship is consensual, highly fiduciary on the part of counsel, and he may do nothing which restricts the right of the client to repose confidence in any counsel of his choice. No concept of the practice of law is more deeply rooted.

*Dwyer,* 336 A.2d at 500.

¶ 19 We therefore conclude that the doctor-patient relationship is special and entitled to unique protection. It cannot be easily or accurately compared to relationships in the commercial context. In light of the great public policy interest involved in covenants not to compete between physicians, each agreement will be strictly construed for reasonableness.[1]

### D. Reasonableness of covenant

■ ¶ 20 Reasonableness is a fact-intensive inquiry that depends on the totality of the circumstances. *Bryceland,* 160 Ariz. at 217, 772 P.2d at 40 ("Each case hinges on its own particular facts."); *Olliver/Pilcher Ins.,* 148 Ariz. at 532, 715 P.2d at 1220. A restriction is unreasonable and thus will not be enforced: (1) if the restraint is greater than necessary to protect the employer's legitimate interest; or (2) if that interest is outweighed by the hardship to the employee and the likely injury to the public. *See* RESTATEMENT § 188 cmt. a.; *see also* Blake, *supra,* 73 HARV. L. REV. at 648–49; Ferdinand S. Tinio, Annotation, *Validity and Construction of Contractual Restrictions on Right of Medical Practitioner to Practice, Incident to Partnership Agreement,* 62 A.L.R.3d 970, 984 (1975). Thus, in the present case, the reasonableness inquiry requires us to examine the interests of the employer, employee, patients, and public in general. *See* 62 A.L.R.3d at 976; *see also Peairs,* 164 Ariz. at 57, 790 P.2d at 755; *Amex Distrib. Co.,* 150 Ariz. at 514, 724 P.2d at 600 (accommodating right to work, right to contract, and public's right to competition); *see generally* Blake, *supra.* Balancing these competing interests is no easy task and no exact formula can be used. *See* RESTATEMENT § 188 cmt. a.

■ ¶ 21 In holding this restrictive covenant enforceable, the court of appeals relied heavily on *Peairs,* noting the restriction here was "very similar to the one in Peairs, which restricted a doctor from practicing orthopedic medicine and surgery within a five-mile radius of each of three offices for three years." *Valley Med. Specialists,* 190 Ariz. at 567, 950 P.2d at 1188. As noted, however, each case must be decided on its own unique facts. *Bryceland,* 160 Ariz. at 217, 772 P.2d at 40. Here, the facts are sufficiently distinguishable from *Peairs* to warrant different treatment. For instance, in *Peairs* the three offices were "clustered," and the total restricted area was thus much smaller. 164 Ariz. at 60, 790 P.2d at 758. The *Peairs* restrictive covenant prevented the practice of "orthopedic medicine and surgery." *Id.* at 56, 790 P.2d at 754. Here, however, the covenant prohibited Dr. Farber from providing any and all forms of "medical care," including not only pulmonology, but emergency medicine, brachytherapy treatment, and HIV-positive and AIDS patient care.

---

1. Dr. Farber asks us to hold restrictive covenants in the medical profession void per se as against public policy. Finding the present covenant unreasonable and thus unenforceable by injunction, we need not and do not address that contention.

Finally, the trial court in *Peairs* granted the preliminary injunction, while the trial court here denied it. Because we review the grant or denial of a preliminary injunction for abuse of discretion, the trial judge's ruling after hearing the evidence in both cases is another factor that distinguishes the two cases.

### E. VMS's protectable interest

¶ 22 VMS contends, and the court of appeals agreed, that it has a protectable interest in its patients and referral sources. In the commercial context, it is clear that employers have a legitimate interest in retaining their customer base. *See, e.g., Bryceland*, 160 Ariz. at 217, 772 P.2d at 40. "The employer's point of view is that the company's clientele is an asset of value which has been acquired by virtue of effort and expenditures over a period of time, and which should be protected as a form of property." Blake, *supra*, 73 HARV. L. REV. at 654. In the medical context, however, the personal relationship between doctor and patient, as well as the patient's freedom to see a particular doctor, affects the extent of the employer's interest. *See Ohio Urology Inc.*, 594 N.E.2d at 1031–32. "The practice of a physician is a thing so purely personal, depending so absolutely on the confidence reposed in his personal skill and ability, that when he ceases to exist it necessarily ceases also...." *Mandeville*, 7 A. at 40–41 (holding medical practice's patient base is not protectable interest); *see also* Berg, *supra*, 45 RUTGERS L. REV. at 17.

¶ 23 Even in the commercial context, the employer's interest in its customer base is balanced with the employee's right to the customers. Where the employee took an active role and brought customers with him or her to the job, courts are more reluctant to enforce restrictive covenants. Blake, *supra*, 73 HARV. L. REV. at 664, 667. Dr. Farber was a pulmonologist. He did not learn his skills from VMS. Restrictive covenants are designed to protect an employer's customer base by preventing "a skilled employee from leaving an employer and, based on his skill acquired from that employment, luring away the employer's clients or business while the employer is vulnerable—that is—before the employer has had a chance to replace the employee with someone qualified to do the job." *Bryceland*, 160 Ariz. at 217, 772 P.2d at 40. These facts support the trial judge's conclusion that VMS's interest in protecting its patient base was outweighed by other factors.

¶ 24 We agree with VMS, however, that it has a protectable interest in its referral sources. *See Medical Specialists, Inc. v. Sleweon*, 652 N.E.2d 517, 523 (Ind.App.1995) ("Clearly, the continued success of [a specialty] practice, which is dependent upon patient referrals, is a legitimate interest worthy of protection."); *Ballesteros v. Johnson*, 812 S.W.2d 217, 223 (Mo.App.1991).

### F. Scope of the restrictive covenant

¶ 25 The restriction cannot be greater than necessary to protect VMS's legitimate interests. A restraint's scope is defined by its duration and geographic area. The frequency of contact between doctors and their patients affects the permissible length of the restraint. Blake, *supra*, 73 HARV. L. REV. at 659. The idea is to give the employer a reasonable amount of time to overcome the former employee's loss, usually by hiring a replacement and giving that replacement time to establish a working relationship. *Id.* Even in the commercial context, "[w]hen the restraint is for the purpose of protecting customer relationships, its duration is reasonable only if it is no longer than necessary for the employer to put a new man on the job and for the new employee to have a reasonable opportunity to demonstrate his effectiveness to the customers." *Amex Distrib. Co.*, 150 Ariz. at 518, 724 P.2d at 604 (quoting Blake, *supra*, 73 HARV. L. REV. at 677).

¶ 26 In this case, the trial judge found that the three-year period was an unreasonable duration because

all of the experts agree that the practice of pulmonology entails treating patients with chronic conditions which require more hospital care than office care and which requires regular contact with the treating physician at least once within each six-month period so that any provision over six months is onerous and unnecessary to pro-

tect VMS's economic interests where virtually all of Dr. Farber's VMS patients had an opportunity by late 1994 or early 1995 (Farber left September 12, 1994) to decide which pulmonologist ... they would consult for their ongoing treatment[.]

On this record, we cannot say this factual finding was clearly erroneous. The three-year duration is unreasonable.

¶ 27 The activity prohibited by the restraint also defines the covenant's scope. The restraint must be limited to the particular speciality of the present employment. *See* Blake, *supra*, 73 HARV. L. REV. at 676. On its face, the restriction here is not limited to internal medicine or even pulmonology. It precludes any type of practice, even in fields that do not compete with VMS. Thus, we agree with the trial judge that this restriction is too broad. *Compare Peairs*, 164 Ariz. at 56, 790 P.2d at 754 (upholding injunction that enforced restrictive covenant preventing doctor from practicing only orthopaedic medicine and orthopaedic surgery).

## G. Public policy

■ ¶ 28 The court of appeals held that the restrictive covenant does not violate public policy, pointing out that the record contains nothing to suggest there will be a lack of pulmonologists in the restricted area if Dr. Farber is precluded from practicing there. Even if we assume other pulmonologists will be available to cover Dr. Farber's patients, we disagree with this view. It ignores the significant interests of individual patients within the restricted area. Kafker, *supra*, 31 AM. BUS. L.J. at 39–40. A court must evaluate the extent to which enforcing the covenant would foreclose patients from seeing the departing physician if they desire to do so. *See Karlin*, 390 A.2d at 1170; *see also* AMA Opinions, Section 9.06.

¶ 29 Concluding that patients' right to see the doctor of their choice is entitled to substantial protection, VMS's protectable interests here are comparatively minimal. *See* Berg, supra, 45 RUTGERS L. REV. at 15–36. The geographic scope of this covenant encompasses approximately 235 square miles, making it very difficult for Dr. Farber's existing patients to continue treatment with him if they so desire. After six days of testimony, the trial judge concluded that this restrictive covenant was unreasonably broad and against public policy. Specifically, the judge found:

(1) the three year duration was unreasonable because pulmonology patients typically require contact with the treating physician once every six months. Thus, a restriction over six months is unnecessary to protect VMS's economic interests. Patients would have had opportunity within approximately six months to decide which doctor to see for continuing treatment;

(2) the five mile radius was unreasonable because with the three offices, the restriction covered more than 235 square miles;

(3) the restriction was unreasonable because it did not expressly provide for an exception for emergency medical treatment;

(4) the restriction was overly broad because it is not limited to pulmonology;

(5) the covenant violates public policy because of the sensitive and personal nature of the doctor-patient relationship.

Given the facts and the principles discussed, that finding is well supported factually and legally.

## H. Severance—the blue pencil rule

■ ¶ 30 This contract contains a severance clause.[2] The court of appeals ac-

---

2. Since it is the agreement and desire of the parties hereto that the provisions of this Paragraph 17 be enforced to the fullest extent possible under the laws and public policies applied in each jurisdiction in which enforcement is sought, should any particular provision of this Paragraph 17 be deemed invalid or unenforceable, the same shall be deemed reformed and amended to delete herefrom that portion thus adjudicated invalid, and the deletion shall apply only with respect to the operation of said provision and, to the extent a provision of this Paragraph 17 would be deemed unenforceable by virtue of its scope, but may be made unenforceable by limitation thereof, each party agrees that this Agreement shall be reformed and amended so that the same shall be enforceable to the fullest extent permissible under the laws and public policies applied in the

cepted a stipulation by VMS that the restriction would not prohibit Dr. Farber from treating HIV-positive and AIDS patients or from performing brachytherapy. On its face, however, the restriction is broader than that, restricting him from providing "medical care or medical assistance for any person or persons who were patients or [sic] Employer during the period that Employee was in the hire of Employer." Arizona courts will "blue pencil" restrictive covenants, eliminating grammatically severable, unreasonable provisions. *See Amex Distrib. Co.,* 150 Ariz. at 514, 724 P.2d at 600; *Olliver/Pilcher Ins.,* 148 Ariz. at 533, 715 P.2d at 1221 ("If it is clear from its terms that a contract was intended to be severable, the court can enforce the lawful part and ignore the unlawful part."). Here, however, the modifications go further than cutting grammatically severable portions. The court of appeals, in essence, rewrote the agreement in an attempt to make it enforceable. This goes too far. "Where the severability of the agreement is not evident from the contract itself, the court cannot create a new agreement for the parties to uphold the contract." *Olliver/Pilcher Ins.,* 148 Ariz. at 533, 715 P.2d at 1221.

¶ 31 Even the blue pencil rule has its critics. For every agreement that makes its way to court, many more do not. Thus, the words of the covenant have an *in terrorem* effect on departing employees. *See* Blake, *supra,* 73 HARV. L. REV. at 682–83. Employers may therefore create ominous covenants, knowing that if the words are challenged, courts will modify the agreement to make it enforceable. *Id.* Although we will tolerate ignoring severable portions of a covenant to make it more reasonable, we will not permit courts to add terms or rewrite provisions.

¶ 32 In modifying the agreement, the court of appeals cited *Peairs,* which indeed allowed the trial court to alter the restrictive covenant in a contract "between medical professionals whose services are necessary for the welfare of the public." 164 Ariz. at 61, 790 P.2d at 759. We disapprove of the portion of *Peairs* that permits courts to rewrite

and create a restrictive covenant significantly different from that created by the parties.

## CONCLUSION

¶ 33 We hold that the restrictive covenant between Dr. Farber and VMS cannot be enforced. Valley Medical Specialists' interest in enforcing the restriction is outweighed by the likely injury to patients and the public in general. *See* RESTATEMENT § 188. In so holding, we need not reach the question of the hardship imposed on Dr. Farber. The public policy implications here are enough to invalidate this particular agreement. We stop short of holding that restrictive covenants between physicians will never be enforced, but caution that such restrictions will be strictly construed. The burden is on the party wishing to enforce the covenant to demonstrate that the restraint is no greater than necessary to protect the employer's legitimate interest, and that such interest is not outweighed by the hardship to the employee and the likely injury to the public. Here VMS has not met that burden. The restriction fails because its public policy implications outweigh the legitimate interests of VMS.

¶ 34 Dr. Farber listed in his petition for review several issues "presented to, but not decided by, the court of appeals." Valley Medical Specialists' response also contained "additional issues if the court accepts review." None of the issues were briefed in this court. We thus remand to the court of appeals for a determination of those issues that are capable of decision and still need to be decided.

THOMAS A. ZLAKET, Chief Justice, and CHARLES E. JONES, Vice Chief Justice, FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice, concur.

---

jurisdiction in which enforcement is sought, the parties hereto acknowledging that the covenants contained in this Paragraph 17 are an indispens-

able part of the transactions contemplated herein.