BALES, Justice,
concurring in part and dissenting in part.
¶ 34 The law firm in this case seeks to impose a penalty of $33,674 on an ex-partner merely because he competed with the firm for clients. Exacting significant financial penalties from former lawyers who compete, I believe, “restricts the right of a lawyer to practice” in violation of ER 5.6(a). My position, unlike that of the majority, is consistent with the language and purpose of our ethical rule. It also comports with the views of most other courts that have addressed this issue, as well as the Restatement (Third) of the Law Governing Lawyers (2000) (“Restatement”). Thus, I respectfully dissent from the majority’s holdings concerning the scope of ER 5.6(a) and the need to remand this case to determine the reasonableness of the “voluntary withdrawal” provisions.
I.
¶ 35 By its terms, ER 5.6(a) prohibits more than just non-compete agreements among attorneys. The rule more generally bars lawyers from entering agreements that “restrict” their right to practice after departing a firm. We have long recognized that non-compete agreements are one form of the broader category of restrictive covenants. See, e.g., Olliver/Pilcher Ins., Inc. v. Daniels, 148 Ariz. 530, 531-32, 715 P.2d 1218, 1219-20 (1986) (distinguishing non-compete agreement from restrictive covenant requiring insurance employee to pay former employer share of fees earned if customers followed employee). While stating that the language of ER 5.6 should not be “stretched” beyond non-compete agreements, op. ¶ 21, the majority in fact compresses the rule to less than what its terms expressly provide.
*33 ¶ 36 Most courts and commentators recognize that law firm agreements that impose significant penalties on competing former lawyers do in fact “restrict” a lawyer’s right to practice within the meaning of rules like ER 5.6(a). See, e.g., Pettingell v. Morrison, Mahoney & Miller, 426 Mass. 253, 687 N.E.2d 1237, 1239 (1997) (noting the “strong majority rule” that courts will not give effect to agreements that impose substantial financial penalties on lawyers for competing with former firms); Cohen v. Lord, Day & Lord, 75 N.Y.2d 95, 551 N.Y.S.2d 157, 550 N.E.2d 410, 411-12 (1989) (noting that reading rule to apply only to provisions that expressly prohibit practice of law conflicts with language and purpose of rule); 2 Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering 47-6 (3d ed. 2005) (“The Law of Lawyering ”) (noting it has become “generally accepted that financial disincentives ‘restrict’ the departing lawyer’s right to practice [and] thus implicate] Rule 5.6(a)”).
¶ 37 Similarly, the Restatement, like our ER 5.6(a), bars lawyers from entering agreements “that restrict [ ] the right of the lawyer to practice law after terminating the relationship.” Restatement § 13(1). Reflecting the generally accepted view, the official comments to the Restatement note that:
[S]uch rules preclude enforcement of a provision of a firm agreement under which a departing lawyer is denied otherwise-accrued financial benefits on entering into competitive law practice, unless the denial applies to all departing lawyers, whether entering into private practice or not....
Id. cmt. b.
¶ 38 The Restatement approach desirably promotes the policies that underlie ER 5.6. These policies are two-fold: preserving both the freedom of clients to choose their lawyers and the professional autonomy of lawyers to choose where to practice and whom to represent. See ER 5.6(a), cmt. 1; Valley Med. Specialists v. Farber, 194 Ariz. 363, 369 ¶ 18, 982 P.2d 1277, 1283 (1999). Discussing American Bar Association (“ABA”) Model Rule of Professional Conduct 5.6(a), from which our rule is drawn, Professors Hazard and Hodes observe:
Rule 5.6(a) is designed in part to protect lawyers, particularly young lawyers, from bargaining away their right to open their own offices after they end an association with a firm or other legal employer. It also protects future clients against having a restricted pool of attorneys from which to choose.
The Law of Lawyering at 47-5.
¶ 39 Some law firms have tried to restrict competition under the guise of retirement provisions, because ER 5.6(a)’s prohibitions do not apply to agreements concerning retirement benefits. See id. Such efforts typically provide for the forfeiture of capital shares or fee income that would otherwise be due a departing lawyer. “Often, the anti-competitive nature of such clauses ... is made all the more clear by the fact that they become inoperative if the lawyer relocates to a different geographic area.” Id. These observations apply to the voluntary withdrawal provisions at issue here, as they result in the forfeiture of the stock purchase price only for those former lawyers who compete with the firm.
¶ 40 “Onerous financial terms of this kind effectively limit the mobility and availability of still active lawyers, and correspondingly reduce client choice.” Id.; accord Cohen, 551 N.Y.S.2d 157, 550 N.E.2d at 411 (“The forfeiture-for-competition provision would functionally and realistically discourage and foreclose a withdrawing partner from serving clients who might wish to continue to be represented by the withdrawing lawyer and would thus interfere with the client’s choice of counsel.”).
¶ 41 In declining to follow the generally accepted approach as reflected in the Restatement, the majority observes that it writes “on a clean slate.” Op. ¶ 14. This is true, however, only in the narrow sense that we have not previously decided a case that actually applied ER 5.6(a) to lawyers. We have, however, recognized that ER 5.6(a) prohibits restrictive covenants among attorneys. See Valley Med. Specialists, 194 Ariz. at 368 ¶ 17, 982 P.2d at 1282 (citing, inter aha, Cohen, 551 N.Y.S.2d 157, 550 N.E.2d at 410-11). Moreover, in other contexts, we have often noted that, in the absence of *34 contrary Arizona law, our courts generally follow the Restatement. See, e.g., Espinoza v. Schulenburg, 212 Ariz. 215, 217 ¶ 9, 129 P.3d 937, 939 (2006). The majority unconvincingly departs from our usual approach by observing, op. ¶ 21 n. 8, that the Reporter’s Notes to Restatement § 13(1) acknowledge that some courts and commentators do not adopt the Restatement’s interpretation— something that could be said of nearly every provision in any Restatement.
¶ 42 The slate is also not clean in that this court only recently approved extensive revisions to our rules of professional conduct, including amendments to ER 5.6(a). See Order Amending Ariz. R. Sup.Ct. 42 and 43, ER 5.6 (2003). These rule changes were the end result of a process that began with the ABA’s Ethics 2000 Commission, which thoroughly reviewed and updated the Model Rules of Professional Conduct. The Arizona State Bar’s Board of Governors in turn established an Ethical Rules Review Group to review the new ABA Model Rules and to recommend appropriate changes to our rules. The only changes proposed for ER 5.6(a) were to broaden its scope to clarify that it applies to all forms of agreements — whether partnership, shareholder, operating, employment, or otherwise — restricting a lawyer’s right to practice after leaving a firm.[14]
¶43 No one suggested that ER 5.6(a) should be revised to limit the rule’s prohibitions to only those agreements expressly barring a lawyer from competing in certain areas or for certain clients. Instead, in requesting changes to ER 5.6(a), the State Bar specifically noted that, “[a]s amended, the Rule and Comments are consistent with the corresponding ABA Model Rule and Comments.” Petition R-02-0045 for Amendment of Arizona Supreme Court Rules 42 and 43 at 21 (2002). One would think that, if Arizona had adopted or proposed to adopt a version of ER 5.6(a) that is narrower than the generally accepted interpretation of Model Rule 5.6 and Restatement § 13, there would be some attention to this fact.
¶ 44 The majority instead defends its constricted reading of Arizona’s ER 5.6(a) by relying on the California Supreme Court’s decision in Howard v. Babcock, 6 Cal.4th 409, 25 Cal.Rptr.2d 80, 863 P.2d 150, 151 (1993), which interpreted Rule 1-500 of the California State Bar’s Rules of Professional Conduct. Op. ¶¶ 18-20. For several reasons, I find Howard’s reasoning unpersuasive. Cf. Pettingell, 687 N.E.2d at 1239 (noting that “[c]ourts have not been attracted to the [minority] view expressed in Howard ”). California’s Rule 1-500 is on its face narrower than ER 5.6(a) because it expressly allows restrictions on a lawyer’s right to practice that satisfy California’s Business and Professions Code, which itself allows certain restrictive covenants. Consistent with the California statutes, the premise of the Howard decision is that law firm partners should be treated, in terms of restrictive covenants, no “differently ... [than] partners in other businesses and professions.” 25 Cal.Rptr.2d 80, 863 P.2d at 157.
¶ 45 Howard’s equation of law firm partners with other professionals does not work in Arizona. Our ER 5.6(a) is not limited to restrictions affecting law firm partners, but instead applies broadly to agreements restricting the right of any lawyer to practice. See ER 5.6(a) & cmt. 1. Reading ER 5.6 narrowly, as does the majority, will impact all lawyers, and not merely law firm partners. Arizona, unlike California, also has no rule providing that lawyers may enter restrictive covenants otherwise authorized by our general professional statutes. Finally, we have already recognized that ER 5.6(a) is broader than the prohibitions on restrictive covenants for other professionals, such as doctors. See Valley Med. Specialists, 194 Ariz. at 368-69 ¶¶ 16-17, 982 P.2d at 1282-83 (noting that although the American Medical Association only discourages restrictive covenants between physicians, such covenants are *35 actually prohibited among attorneys). Thus, the fact that professionals other than lawyers may also owe duties to their clients cannot determine the scope of ER 5.6(a), a rule that reflects this court’s authority to regulate the practice of law and interests in client choice and lawyer autonomy that are in some respects unique to the legal profession.
¶ 46 At bottom, the majority’s decision to limit ER 5.6(a) to only those agreements that expressly bar a lawyer from competing with a former firm rests on a policy concern — the view that law firms should be able to protect their own economic interests by imposing financial penalties on former lawyers who compete. See Op. ¶ 19; cf. The Law of Law-yering at 47-6 (recognizing that Howard rests on policy concerns that give primacy to law firm continuity). This policy, however, is not recognized by either the text of ER 5.6(a) or its previously identified purposes. See Pettingell, 687 N.E.2d at 1239 & n. 4 (noting that Model Rule 5.6 focuses on lawyer autonomy and, chiefly, client choice, “not the interrelationship of the partners and former partners”). If a law firm’s “obligation to protect [its] own economic interests,” op. ¶ 19, merits recognition in ER 5.6(a), we should consider proposals to amend the rule, which would allow an opportunity for broad public comment and full consideration of the interests involved, rather than engrafting California’s minority approach onto our rule by judicial decision.
¶ 47 The majority’s approach will unfortunately subvert the interests that are protected by ER 5.6(a). Law firms and other legal employers will be encouraged to avoid the prohibitions in ER 5.6(a) by seeking to impose — as this case illustrates — financial penalties rather than explicit restrictions on competing former attorneys. Because the legality of such penalties will be judged only post hoc under a vague reasonableness standard, lawyers will be discouraged from leaving their firms to compete or from challenging post-departure restrictions. Cf. Valley Med. Specialists, 194 Ariz. at 372 ¶ 31, 982 P.2d at 1286 (recognizing that restrictive covenants that are not challenged in court may have in terrorem effect on departing employees). This result may help law firms tighten the golden handcuffs on their lawyers; it will not promote autonomy on the part of individual attorneys or the freedom of clients to be represented by the lawyer of their choice.
¶ 48 I would instead apply ER 5.6(a) by its terms and hold that the voluntary withdrawal provisions at issue here — which require a former lawyer to forfeit the purchase price of his stock if he competes after departing — are a restriction on a lawyer’s right to practice and are therefore unenforceable. The majority’s holding that such provisions escape the prohibitions of ER 5.6(a) will undermine the interests protected by that rule and unnecessarily require courts to engage in fact-specific adjudication over penalty provisions that should be held void on their face.
II.
¶ 49 Even if I accepted the majority’s conclusion that the penalty provisions in this case should be evaluated for their “reasonableness,” a remand would not be necessary. Although a fact-specific inquiry, the reasonableness of restrictive covenants remains a question of law in Arizona. Valley Med. Specialists, 194 Ariz. at 366-67 ¶ 11, 982 P.2d at 1280-81. Further, “a covenant not to compete is invalid unless it protects some legitimate interest beyond the employer’s desire to protect itself from competition.” Id. at 367 ¶ 12, 982 P.2d at 1281 (citations omitted).
¶ 50 The law firm did have an opportunity below to present facts concerning the reasonableness of the “voluntary withdrawal” provisions. In briefing on the cross-motions for summary judgment, RSCE specifically argued that the provisions are reasonable under the Howard approach. In support of this argument, RSCE contended that the provisions do not result in any forfeiture on the part of Fearnow (an implausible assertion which the majority itself rejects) and that the provisions are reasonable because the firm lost clients who chose to follow Fearnow after he departed. The second reason offered by RSCE to support the provisions fails as a matter of law — given ER 5.6(a), the firm has no legitimate interest merely in avoiding competition for its clients by its former lawyers.
*36 ¶ 51 To the extent that other rationales might be offered for requiring departing lawyers to forfeit the price of their capital stock upon withdrawal, e.g., a firm’s desire to recoup some transition costs or to reserve sufficient funds to cover firm debts, the provision here is patently under-inclusive, and thus unreasonable, because it singles out only those former lawyers who compete. Cf. Pet-tingell, 687 N.E.2d at 1240 (acknowledging that a firm might reasonably apply a charge to all attorneys to prevent the firm from being left with “onerous” debts); Denburg v. Parker Chapin Flattau & Klimpl, 82 N.Y.2d 375, 604 N.Y.S.2d 900, 624 N.E.2d 995, 999 (1993) (rejecting argument that capital forfeiture provision was justified by desire to recoup firm’s relocation costs where penalty applied only to those departing lawyers who were potential competitors).
¶ 52 RSCE already had an opportunity to present facts in support of the reasonableness of its provisions or to identify disputed material facts that preclude summary judgment. Cf. Valley Med. Specialists, 194 Ariz. at 372 ¶ 33, 982 P.2d at 1286 (noting party seeking to enforce restrictive covenant has burden of showing it “is no greater than necessary to protect the employer’s legitimate interest, and that such interest is not outweighed by” harm to employee or public). It failed to do so, and there is no good reason to prolong this litigation by remanding for further proceedings on this issue.
III.
¶ 53 I concur in the majority’s opinion insofar as it holds that, if the “voluntary withdrawal” provisions are unenforceable, the appropriate remedy is for Fearnow to recover the amount he originally was deemed to have paid for his stock.

. The changes to ER 5.6(a), which became effective on December 1, 2003, are indicated with underlined additions and struck-through deletions in the following text:
A lawyer shall not participate in offering or making: (a) a partnership, shareholders, operating, er employment, or other similar type of agreement that restricts the rightsright of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement.