314 P.3d 89

ORCA COMMUNICATIONS UNLIMIT-
ED, LLC, a limited liability com-
pany, Plaintiff/Appellant,

v.

Ann J. NODER and Christopher C. Noder,
wife and husband; Pitch Public Rela-
tions, LLC, a limited liability company,
Defendants/Appellees.

No. 1 CA–CV 12–0183.

Court of Appeals of Arizona,
Division 1, Department B.

Oct. 17, 2013.

David B. Earl, Phoenix, Attorney for Plaintiff/Appellant.

Law Office of Monica A. Limon–Wynn PLLC by Monica A. Limón–Wynn, Tempe, and Snell & Wilmer LLP by Martha E. Gibbs, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

HOWE, Judge.

¶ 1 Orca Communications Unlimited, LLC, appeals the trial court's dismissal of its complaint against Ann J. Noder that alleged that Noder breached her contract with Orca and committed several business torts against the company. For the reasons set forth below, we affirm the court's dismissal of Orca's claims for breach of contract and fraud, but vacate the court's dismissal of Orca's claims

for breach of the covenant of good faith and fair dealing, breach of fiduciary duty and duty of loyalty, tortious interference with business expectancies and unfair competition.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Orca is an Arizona limited liability company that provides public relations services primarily to companies in the United States. From July 1, 2002, until May 1, 2009, Noder served as Orca's president. As president, Noder had full access to and control over Orca's financial information, customer information, contracts with vendors and customers, and customer and employee relationships. Because Noder had no professional experience in public relations when she began working for Orca, Orca provided her with extensive on-the-job training. As part of her employment, Noder executed a Confidentiality, Non–Solicitation, and Non–Competition Agreement ("the Agreement"). The Agreement consisted of four restrictive covenants that prohibited Noder from using or disclosing confidential information for any purpose other than to benefit the company without the company's consent ("the confidentiality covenant"); providing conflicting services ("the non-compete covenant"); soliciting any customer or "potential customer" ("the customer non-solicitation covenant"); and hiring current or certain former employees ("the employee non-solicitation covenant"). The Agreement was not itself a "contract of employment" between Orca and Noder but addressed only her confidentiality, noncompetition, and non-solicitation obligations to Orca. Orca and Noder agreed that the Agreement should be read consistently with any employment agreement that they may enter.

¶ 3 The confidentiality covenant, set forth in section 4.3, prohibited Noder from "directly or indirectly circumvent[ing] or compet[ing] with The Company with regard to any Confidential Information." The Agreement defined confidential information in section 2.2 as "knowledge or information not generally known to the public or in the public relations industry" that Noder learned from her employment with Orca that related to Orca, its business partners, or the business of its customers or potential customers. This included "any information [Noder] learn[ed] of, possess[ed] as a result of, or access[ed] through" Noder's employment. The definition excluded "publicly known" information, information "readily accessible to the public in a written publication," but included information that was only available through "substantial searching of published literature" or that had to be "pieced together" from a number of publications or sources. In the event of a dispute, the covenant placed on Noder the burden of proving that information was not confidential. The confidentiality covenant had no geographical or temporal limitation, but the Agreement stated in section 4.3.5 that if a temporal limitation was required to enforce the covenant, the covenant would bind Noder for twelve months from the last date of her employment with Orca.

¶ 4 The non-compete covenant, set forth in section 4.4.1, prohibited Noder from directly or indirectly advertising, soliciting, or providing "Conflicting Services" within the "Restricted Territory." The Agreement defined "Conflicting Services" in section 2.1 as "any product, service or process of any person or organization other than The Company, which directly competes with a product, service or process with which Employee works directly or indirectly during [her] employment with The Company or about which Employee acquires Confidential Information during Employee's employment with The Company." The Agreement defined "Restricted Territory" in section 4.4.4 as the largest of the following geographic areas that a court would find enforceable: all fifty United States and the District of Columbia; Maricopa County, Arizona; within 150 radial miles of Orca's Phoenix offices; within 100 radial miles of Orca's Phoenix offices; within 50 radial miles of Orca's Phoenix offices; within 25 radial miles of Orca's Phoenix offices; or within 10 radial miles of Orca's Phoenix offices.

¶ 5 The customer non-solicitation covenant, set forth in section 4.4.2, prohibited Noder from "request[ing], induc[ing], or attempt[ing] to induce any Customer or Potential Customer who does business in the Restricted Territory to terminate or adversely

alter its relationship with The Company." The Agreement defined "Customer or Potential Customer" in section 2.3 as any person or entity who "at any time during [Noder]'s employment" with the company had contracted or billed, or "received any product or service, or process from the company"; was in contact with the company or its employees, agent, or owner about receiving "any product, service, or process" from the company that Noder knew or should have known about; or "had been solicited" by the company, or whom the company had been considering or planning to solicit, in an effort in which Noder was involved or of which she should have been aware. The employee non-solicitation covenant prohibited Noder from attempting "to hire, employ or associate in business with any person employed by [Orca] or who has left the employment of [Orca] within the preceding six months."

¶ 6 The Agreement also provided in section 4.4 that Noder was required to abide by the non-compete and the non solicitation covenants for eighteen months after her employment with Orca ended. That section further provided that if a court determined that the eighteen-month period was unenforceable, the time-limitation would be stepped down to the longest of the following enforceable periods: fifteen months, twelve months, nine months, or six months.

¶ 7 In February 2009, Noder negotiated with Orca's owner to purchase the company. During these negotiations, Noder represented to the owner that she agreed with the owner's proposed sale terms and would have counsel prepare a sale and purchase agreement based on those terms. Noder never gave the owner a purchase agreement, however, and instead presented a counter-proposal. The owner refused this counter-proposal, and the negotiations ended. Noder then contacted a number of Orca's potential customers, telling them that she planned to form a competing company and encouraging them to wait until she formed her own company so that she could obtain their business. On May 1, 2009, Noder resigned from Orca and formed Pitch Public Relations, LLC, an Arizona limited liability company that offered the same or similar services as Orca.

¶ 8 On August 18, 2010, Orca filed a complaint against Noder. In count one, breach of contract, Orca alleged that Noder violated all four restrictions of the Agreement by operating a business that provides "conflicting services," by hiring a former Orca employee, by disclosing and using confidential information belonging to Orca, and by inducing "Orca's customers to stop doing business with Orca and to do business with Pitch Public Relations instead." In count two, breach of fiduciary duty and duty of loyalty, Orca alleged that Noder established a competing business while employed, took Orca's corporate opportunities for herself and her new business, and worked on her new business during work time while using Orca's resources.

¶ 9 In count three, breach of the covenant of good faith and fair dealing, Orca alleged Noder "hid from Orca her intentions to start a competing business and divert customers away from Orca," breaching "the covenant of good faith and fair dealing implied in her employment relationship with Orca." In count four, fraud, Orca alleged that Noder falsely represented to Orca that she agreed with the proposed terms of sale and would have an attorney draw up the terms, but instead offered Orca a conflicting counter-proposal. In count five, tortious interference with business expectancies, Orca alleged that Noder interfered with its business expectations with its customers by taking those customers. In count six, unfair competition, Orca alleged that Noder established Pitch Public Relations using confidential and trade secret information.

¶ 10 Noder moved to dismiss all counts pursuant to Arizona Rule of Civil Procedure 12(b)(6), for failure to state a claim for which relief could be granted. She made several arguments: The breach of contract claim should be dismissed because the four restrictive covenants were overbroad and unenforceable. The breach of the covenant of good faith claim should be dismissed because the contract was unenforceable. The breach of fiduciary duty, the tortious interference, and the unfair competition claims should be dismissed because Arizona's Uniform Trade Secret Act ("AUTSA") preempted them. Fi-

nally, the fraud claim should be dismissed because Orca failed to sufficiently allege fraud.

¶ 11 The trial court granted Noder's motion and awarded her attorneys' fees. The court dismissed the breach of contract and the breach of the covenant of good faith and fair dealing counts because neither count stated a claim "upon which an action may be based." The court dismissed the breach of duty, the tortious interference, and the unfair competition claims because AUTSA preempted them. Finally, the court dismissed the fraud claim because the facts did not support a claim for fraud. The court did, however, allow Orca leave to amend its fraud claim as a contract claim. Orca subsequently amended its complaint according to the court's order, but Noder moved to dismiss the amended complaint, and the court did so.

¶ 12 Orca timely appeals the trial court's dismissal. This court has jurisdiction on appeal pursuant to Arizona Revised Statutes ("A.R.S.") § 12–2101(B).

## DISCUSSION

■ ¶ 13 Orca argues that the trial court erred in dismissing its complaint, allowing leave to amend only the fraud claim, and awarding Noder attorneys' fees.[1] We review a Rule 12(b)(6) dismissal of a complaint de novo. *Coleman v. City of Mesa,* 230 Ariz. 352, 355 ¶ 7, 284 P.3d 863, 866 (2012). We will uphold the dismissal "only if as a matter of law [ ] plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Id.* at 356 ¶ 8, 284 P.3d at 867 (internal quotation marks omitted). "In determining if a complaint states a claim on which relief can be granted, courts must assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient." *Id.* at ¶ 9.

### I. Enforceability of the Restrictive Covenants

■ ¶ 14 Orca first argues that the trial court erred by holding that the restrictive

covenants were unenforceable. "Restrictive covenants which tend to prevent an employee from pursuing a similar vocation after termination of employment are disfavored" and are strictly construed against the employer. *Amex Distrib. Co., Inc. v. Mascari,* 150 Ariz. 510, 514, 724 P.2d 596, 600 (App.1986). A restrictive covenant is unreasonable and will not be enforced "(1) if the restraint is greater than necessary to protect the employer's legitimate interest; or (2) if that interest is outweighed by the hardship to the employee and the likely injury to the public." *Valley Med. Specialist v. Farber,* 194 Ariz. 363, 369 ¶ 20, 982 P.2d 1277, 1283 (1999). The employer bears the burden of proving the extent of its protectable interest. *Hilb, Rogal & Hamilton Co. v. McKinney,* 190 Ariz. 213, 216, 946 P.2d 464, 467 (App.1997). We analyze each covenant in turn and find them unenforceable.

### A. Confidentiality Covenant

¶ 15 Orca argues that the confidentiality covenant is enforceable because it protects "truly confidential information"—"knowledge or information not generally known in the public relations industry." Information constituting a "trade secret" is entitled to protection from misappropriation, *Calisi v. Unified Fin. Servs., LLC,* 232 Ariz. 103, 106 ¶ 14, 302 P.3d 628, 631 (App.2013), and customer information, if "truly confidential, and to a substantial degree inaccessible, [also] may be given a measure of the protection accorded true trade secrets," *Amex Distrib. Co., Inc.,* 150 Ariz. at 516, 724 P.2d at 602. Information available in trade journals, reference books, or published materials, however, is considered public knowledge and not confidential. *Enter. Leasing Co. of Phoenix v. Ehmke,* 197 Ariz. 144, 149 ¶ 15, 3 P.3d 1064, 1069 (App.1999).

¶ 16 The difficulty here is that the Agreement's definition of "confidential information" extends far beyond the "truly confidential." The definition properly excludes "publicly

---

1. Orca does not dispute on appeal the trial court's finding that the employee non-solicitation covenant is overbroad or the trial court's dismissal of the amended complaint. Accordingly, we need not address those rulings. *Carrillo v. State,* 169 Ariz. 126, 132, 817 P.2d 493, 499 (App.1991) ("Issues not clearly raised and argued on appeal are waived.").

known" information, and further defines "publicly known" as "readily accessible to the public in a written publication," but then includes within its ambit information that is available through "substantial searching of published literature" or that has to be "pieced together" from a number of publications or sources. The definition also includes as confidential, "any information" Noder "learn[ed] of, possess[ed] as a result of, or access[ed] through employment" with Orca.

¶ 17 This definition is overbroad in two respects. First, it deems that public information—information that is available in written publications—is nevertheless confidential if the public has to do "substantial searching" in public publications for it or has to combine information from multiple publications to derive it. This is untenable. Information easily or readily available to the public remains public knowledge and not protectable as confidential information even if a member of the public may have to expend substantial time to gather it and comprehend its significance. Second, the definition deems any information that Noder may have come across during her employment with Orca confidential regardless whether the information is truly confidential—not known to the public and "substantially inaccessible." Orca cannot deem by fiat all information Noder acquired through her employment "confidential." Orca has no protectable interest in public information.

¶ 18 The definition's overbreadth makes the confidentiality covenant unenforceable. Not only does it impermissibly prohibit Noder from using public information, its prohibition of Noder's use of any information she may have learned from her employment with Orca is nothing more than an unlimited restriction against competing with Orca. *See Amex Distrib. Co., Inc.,* 150 Ariz. at 517, 724 P.2d at 603 (an unrestricted and overbroad confidentiality covenant "simply boils down to a noncompetition covenant"). A restriction on a former employee's right to compete against a former employer is enforceable, but only if the restriction is limited in time and in geography. *Id.* (restriction must have temporal limitation); *Valley Med.,* 194 Ariz. at 370 ¶ 25, 982 P.2d at 1284 ("A restraint's scope is defined by its duration and geographic area."). Although the Agreement provides in section 4.3.5 that the confidentiality covenant is limited to twelve months after Noder's employment has terminated—if a court requires it for the covenant to be enforceable—it has no geographic limitation.[2] The Agreement thus prohibits her from working anywhere in the public relations industry for twelve months. At trial on the confidentiality covenant, Orca would be unable to show any facts that would outweigh this hardship on Noder. Thus, the trial court did not err in finding that the confidentiality covenant is unenforceable as the equivalent of a geographically unrestricted non-competition agreement.

**B. The Non–Compete And Customer Non–Solicitation Covenants**

¶ 19 Orca also maintains that the non-compete and the non-solicitation of customers covenants are enforceable, but as with the confidentiality covenant, those covenants are overbroad because they protect more than Orca's legitimate business interest. Non-compete and non-solicitation restrictions are enforceable if they are "no broader than necessary to protect the employer's legitimate business interest." *Hilb,* 190 Ariz. at 216, 946 P.2d at 467. An employer does have a legitimate interest in restraining a former employee "from appropriating valuable trade information and customer relationships" acquired during employment. *Bryceland v. Northey,* 160 Ariz. 213, 216, 772 P.2d 36, 39 (App.1989) (quoting Restatement (Second) of Contracts § 188, comment b (1981)). But because an employer may not eliminate competition *per se,* a restrictive covenant that goes beyond protecting a legitimate business interest and prevents a former employee from using skills and talents learned on a former job is unenforceable, *id.* at 216–17, 772 P.2d at 39–40.

---

2. Although the Agreement expressly limits the geographic scope of the non-compete and the non-solicitation covenants to the defined "Re-stricted Territory," the Agreement does not apply the "Restricted Territory" provision to the confidentiality covenant.

¶ 20 This is why the non-compete covenant is unenforceable. The covenant prohibits Noder from directly or indirectly advertising, soliciting or providing "Conflicting Services," which is defined as "any product, service, or process" that directly competes with one she worked on or acquired confidential information about during her employment with Orca. Although Noder was Orca's president and had access to any trade secret or confidential information, this covenant is not limited to that protectable interest. Instead, this covenant is so broad that it prevents Noder from pursuing any type of work in the public relations industry, even work that would be based on her skill and talents and not merely on confidential information or customer relationships. The covenant prevents Noder from competing *per se* in the public relations industry, and Orca has no protectable interest in preventing her from doing so. No amount of factual development could show that Orca has narrowly tailored this covenant. Thus, the trial court did not abuse its discretion in finding the non-compete covenant unenforceable.

¶ 21 The same is true regarding the non-solicitation covenant. Although Orca has a protectable interest in customer relationships when an employee leaves, an employer has no protectable interest in persons or entities as customers when the employer has no business ties to them. *See Hilb*, 190 Ariz. at 216, 946 P.2d at 467; *Bryceland*, 160 Ariz. at 217, 772 P.2d at 40 (noting without deciding, that "the restriction against employment by any 'potential customer or client' of Bryceland may be overly broad").

¶ 22 The customer non-solicitation covenant applies to persons or entities with whom Orca has no business ties. According to the covenant, the restriction applies not only to "actual" customers, but also to "potential" customers, those persons or entities whom Orca is planning to solicit. This definition is so broad that anyone could be included as a potential customer. Moreover, the covenant includes within its definition former customers, with whom Orca no longer does business. Orca has no protectable interest in either potential customers or former customers. Thus, the trial court did not abuse its discretion in finding that the customer nonsolicitation covenant was unenforceable.[3]

## C. Severability of Agreement

¶ 23 Orca argues that even if some of the Agreement's covenants are unenforceable, the trial court should still have enforced the valid ones. While courts will sever unreasonable covenants if an agreement allows it, a court will not add terms or rewrite an agreement to make it enforceable. *See Valley Med.*, 194 Ariz. at 372 ¶ 31, 982 P.2d at 1286. Although the Agreement contains a severance clause, sections 5.2 and 5.3, none of the covenants at issue here are enforceable, so no question exists about severing the enforceable covenants from the unenforceable. To find the Agreement enforceable, we would have to rewrite the unenforceable covenants, a proposition that Arizona does not allow. *See id.* Because none of the restrictive covenants at issue are enforceable, the trial court did not err in dismissing Orca's claim for breach of contract.

## II. Covenant of Good Faith and Fair Dealing

¶ 24 Orca next argues that the trial court should not have dismissed its claim for breach of the covenant of good faith and fair dealing because the claim was not based entirely on the Agreement, but on the covenant of good faith and fair dealing implied in Noder's contractual employment relationship. Every valid contract contains an implied covenant of good faith and fair dealing. *Johnson*

---

**3.** Orca argues that these covenants have temporal and geographical limitations, set forth in sections 4.4 and 4.4.4. Although Noder argues that the covenants are unenforceable because they are unreasonable "step-down provisions," which set out progressively less onerous restrictions and depend on a reviewing court's view of reasonableness to determine which incremental restriction is enforceable, we need not address the propriety of such provisions. The Agreement's restrictive covenants are unenforceable regardless of the propriety of the step-down provisions, because the covenants' content is too broad: the covenants restrict too much information and too much activity.

*Int'l, Inc. v. City of Phoenix,* 192 Ariz. 466, 473–74 ¶ 46, 967 P.2d 607, 614–15 (App.1998).

¶ 25 While the Agreement's covenants are unenforceable, Orca's covenant of good faith and fair dealing claim was not based on that Agreement. Indeed, the Agreement specifically stated that it pertains only to the four covenants and was not intended to create any additional employment contract or relationship. Instead, Orca's claim was based on the implied contractual employment relationship between Noder and Orca. A.R.S. § 23–1501(A)(1) ("The employment relationship is contractual in nature."). In such a relationship, Noder owed her employer a fiduciary duty of loyalty that prohibited her from competing against her employer and soliciting co-workers to join her competing business while still working at Orca. *Sec. Title Agency, Inc. v. Pope,* 219 Ariz. 480, 492 ¶¶ 53, 55, 200 P.3d 977, 989 (App.2008). Accordingly, the trial court erred in dismissing Orca's claim for a breach of the covenant of good faith and fair dealing because Orca could still maintain this claim outside of the Agreement.

### III. Orca's Tort Claims

¶ 26 Orca also argues that the trial court should not have dismissed its claims for breach of fiduciary duty and duty of loyalty, tortious interference with business expectancies, and unfair competition because the AUTSA does not preempt these claims. The Uniform Trade Secrets Act ("UTSA") "codifies the basic principles of common-law trade secret protection." *Enter. Leasing,* 197 Ariz. at 148 ¶ 12, 3 P.3d at 1068. Arizona's version of the UTSA, AUTSA, "displaces conflicting tort, restitutionary and other laws of this state providing civil remedies for misappropriation of a trade secret." A.R.S. § 44–407(A). The trial court found that this preemption "extends even to 'confidential information' which is not asserted to rise to the level of a trade secret, as is the case here" and dismissed all three of Orca's tort claims.

¶ 27 Whether preemption extends to "confidential information" is an issue of first impression for Arizona. We need not answer this question for Orca's tortious interference with business expectancies and

breach of fiduciary duty and duty of loyalty claims because neither claim alleges the misuse of confidential or trade secret information. Our review of the record shows that Orca's breach of fiduciary duty and duty of loyalty claim alleges that Noder engaged in improper conduct, including establishing a competing business and working on that new business while still working at Orca. Orca's tortious interference with business expectancies claim alleges Noder's interference with Orca's business by "taking customers or potential customers" from it. While Orca may allege the misuse of "confidential information" at trial to prove these claims, in which case the preemption question would arise, Orca's complaint does not do so here. Accordingly, the trial court erred in dismissing Orca's tortious interference with business expectancies, breach of fiduciary duty and duty of loyalty claims.

¶ 28 Orca's unfair competition claim, however, does allege the misuse of both confidential and trade secret information. To the extent Orca's claim alleges the taking of trade secret information, the AUTSA preempts it. But to the extent Orca's claim alleges the taking of confidential information, we must decide whether AUTSA would preempt that claim. We review issues of law involving statutory interpretation de novo. *State v. Ross,* 214 Ariz. 280, 283 ¶ 21, 151 P.3d 1261, 1264 (App.2007). Our primary goal of statutory interpretation is to find and give effect to legislative intent. *Id.* at ¶ 22. We first look to the plain language of the statute as the best indicator of that intent. *Fragoso v. Fell,* 210 Ariz. 427, 430 ¶ 7, 111 P.3d 1027, 1030 (App.2005). When statutory language is clear and unambiguous, we give full effect to it and do not use other methods of statutory interpretation. *Id.*

The AUTSA provides:

A. Except as provided in subsection B, this chapter displaces conflicting tort, restitutionary and other laws of this state providing civil remedies for misappropriation of a trade secret.

B. This chapter does not affect:

1. Contractual remedies, whether or not based on misappropriation of a trade secret.

2. Other civil remedies that are not based on misappropriation of a trade secret.

3. Criminal remedies, whether or not based on misappropriation of a trade secret.

A.R.S. § 44–407.

¶ 29 The AUTSA's preemption provision is identical to the provision adopted by most states. Courts that have reviewed the UTSA are divided on the preemption issue. A majority of courts that have considered this issue interpret the UTSA to preempt all common law tort claims based on misappropriation of information regardless whether it reaches the level of a trade secret. *See, e.g., Mortgage Specialists, Inc. v. Davey*, 153 N.H. 764, 904 A.2d 652, 664 (2006); *Blue-Earth Biofuels, LLC v. Hawaiian Elec. Co., Inc.*, 123 Hawai'i 314, 235 P.3d 310, 324 (2010); *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F.Supp.2d 649, 654 (E.D.Tenn.2004). They hold such an interpretation is consistent with UTSA's purpose to create "a uniform business environment [with] more certain standards for protection of commercially valuable information[,]" *Mortg. Specialists, Inc.*, 904 A.2d at 663 (quoting *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F.Supp.2d 784, 789 (W.D.Ky.2001)), and "to preserve a single tort action under state law for misappropriation of a trade secret" as defined in the UTSA while eliminating tort actions "founded on allegations of misappropriation that may not meet the statutory standard for a trade secret," *id.* (quoting *Burbank Grease Servs., LLC v. Sokolowski*, 278 Wis.2d 698, 693 N.W.2d 89, 98 (App. 2005), *rev'd in part*, 294 Wis.2d 274, 717 N.W.2d 781 (2006)). A strong minority of courts, however, interpret the statute to preempt only trade secret information. *See Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F.Supp.2d 652, 656–59 (E.D.Va.2002); *Burbank Grease Servs., LLC v. Sokolowski*, 294 Wis.2d 274, 717 N.W.2d 781, 788 (2006). This interpretation is consistent with "a plain reading of the statute" which instructs that the UTSA "dis-

places conflicting tort, restitutionary, and other law ... providing civil remedies for misappropriation of a trade secret." *Stone Castle Fin.*, 191 F.Supp.2d at 659 (quoting Virginia's version of the UTSA, Va.Code Ann. § 59.1–336). We agree with the minority's plain language interpretation.

¶ 30 The AUTSA's preemption provision states that the AUSTA does not affect "other civil remedies that are not based on misappropriation of a *trade secret.*" A.R.S. § 44–407(B)(2) (emphasis added). The statute defines trade secret as information that has independent economic value from not being generally known or readily ascertainable to others "who can obtain economic value from its disclosure or use" and is the subject of reasonable efforts to maintain its secrecy. A.R.S. § 44–401(4). Under AUTSA, a trade secret has a specific meaning and not all information will rise to this level. *See Enter. Leasing*, 197 Ariz. at 150 ¶ 20, 3 P.3d at 1070 ("We recognize that not every commercial secret qualifies as a trade secret."). The legislature's inclusion of trade secret in the preemption provision, and its specific definition of trade secret in the statute, confirm that the legislature did not intend the statute to preempt civil remedies that are not based on misappropriation of a trade secret. Thus, the statute does not preempt a claim based on the misappropriation of confidential information that does not rise to the level of trade secretion information.

¶ 31 The decisions that rely on the UTSA's purpose of uniformity do not persuade us to the contrary. Our AUTSA does not contain the same statement of purpose directive that other state statutes contain. *See, e.g.,* Ind.Code 24–2–3–1(b) ("This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject matter of this chapter among states enacting the provisions of this chapter."); N.H.Rev. Stat. Ann. § 350–B:8 ("This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it."); Utah Code § 13–24–9 (same). Thus, we find, based on the plain language of the statute, that the AUTSA

does not preempt a claim based on the misuse of confidential information that does not rise to the level of trade secret. Accordingly, we reverse the trial court's determination on Orca's unfair competition claim to the extent this claim is not based on trade secrets.

## IV. Orca's Fraud Claim

¶ 32 Orca further argues that the trial court erred in dismissing the fraud claim involving the sale of the business. Fraud requires showing that a person made a material and false representation; that the person knew of its falsity or ignored its truth, but intended the recipient to act upon in a manner reasonably contemplated; that the hearer was ignorant of its falsity and rightfully relied on its truth; and the hearer was consequently and proximately injured. *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982). "[T]he circumstances constituting fraud or mistake must be stated with particularity." Ariz. R. Civ. P. 9(b). "Bare allegations that a thing is 'fraudulent' are insufficient." *Spudnuts, Inc. v. Lane*, 131 Ariz. 424, 426, 641 P.2d 912, 914 (App.1982). "While Arizona recognizes a cause of action for 'promissory fraud'—the making of a promise without intent to perform—a breach of contract is not fraud." *Trollope v. Koerner*, 106 Ariz. 10, 19, 470 P.2d 91, 100 (1970).

¶ 33 Noder represented to Orca's owner that she agreed with the sale price and that she would have her attorney draw up an agreement. Taking these allegations as fact, they do not set out with particularity a case for fraud or promissory fraud. At no time did Noder's representation give rise to an action for fraud or a promise to perform. Noder never promised to sign the papers; she merely represented to Orca's owner that she agreed with the price and would have her attorneys draw up the agreement. Orca's complaint does not allege sufficient facts to support a claim of fraudulent representation. Thus, the trial court did not abuse its discretion in dismissing the fraud claim.

## V. Leave to Amend the Complaint

¶ 34 Orca additionally argues that the trial court erred by allowing Orca leave to amend only its fraud claim. However, Orca never presented this argument to the trial court and instead submitted an amended complaint that addressed only the fraud claim. Thus, it has now waived the issue on appeal. *Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal.")

## VI. Attorneys' Fees

¶ 35 Orca and Noder have each requested fees on appeal under A.R.S. § 12–341.01(A). Because neither party is fully successful on appeal, we decline to award fees to either party. After the case is resolved on the merits, the trial court may consider fees incurred on appeal in determining any fee award to the prevailing party. *See Baseline Fin. Servs. v. Madison*, 229 Ariz. 543, 546 ¶ 17, 278 P.3d 321, 324 (App. 2012).

## CONCLUSION

¶ 36 We affirm the trial court's ruling dismissing Orca's claim for breach of the Agreement and fraud, but reverse the ruling on Orca's claims for breach of the covenant of good faith and fair dealing, breach of fiduciary duty and duty of loyalty, tortious interference with business expectancies, and unfair competition. We remand for further proceedings consistent with this decision.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge, and ANDREW W. GOULD, Judge.