NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

QUICKEN LOAN, INC., a foreign corporation,
*Plaintiff/Appellant*,

*v.*

WENDY BEALE; LYDIA GARZA; DUSTIN ANDERSEN; COLIN
KOROLSKY; AYRULA AYRULA; BARON TYLER COX; and WYMAN
JACOBS, *Defendants/Appellees,*

LOANDEPOT, *Intervenor/Appellee.*

No. 1 CA-CV 13-0053
FILED 5-13-2014

Appeal from the Superior Court in Maricopa County
CV2011-019793
The Honorable Katherine M. Cooper, Judge

**AFFIRMED**

COUNSEL

Littler Mendelson, PC, Phoenix
By Peter C. Prynkiewicz

Honigman Miller Schwartz & Cohn, LLP, Detroit, MI
By Robert J. Muchnick, William D. Sargent
*Co-Counsel for Plaintiff/Appellant*

Schneider & Onofry, PC, Phoenix
By Luane Rosen, Michelle Swann
*Counsel for Defendants/Appellees*

Sherman & Howard, LLC, Phoenix
By John Alan Doran
*Counsel for Intervenor/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

---

**O R O Z C O**, Judge:

**¶1**　　　Appellant Quicken Loans, Inc. (Quicken Loans) appeals from the trial court judgment granting summary judgment in favor of Appellees Wendy Beal, Lydia Garza, Dustin Andersen, Colin Korolsky, Ayrula Ayrula, Baron Tyler Cox, and Wyman Jacobs (collectively Employees), and Intervenor loanDepot (collectively Defendants). Quicken Loans also appeals from the trial court's orders denying Quicken Loans' motion for an evidentiary hearing regarding Defendants' application for attorney fees, and awarding Defendants' attorney fees and costs. For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　Employees are former employees of Quicken Loans, who subsequently worked for loanDepot. Quicken Loans and loanDepot are competitors in the online mortgage industry. As a condition of employment at Quicken Loans, all Employees signed an Employment Agreement (Agreement), which contained a covenant not to compete[1] and a covenant not to raid Quicken Loans' employees, also known as the

---

[1]　　　Quicken Loans has not raised the covenant not to compete clause as an issue in this appeal. Therefore, we do not address it. *See, e.g.*, *Dawson v. Withycombe*, 216 Ariz. 84, 100 n.11, ¶ 40, 163 P.3d 1034, 1050 n.11 (App. 2007) ("By not raising the issue in their opening briefs, Appellants have waived [the issue] on appeal.").

"Non-Contact Provision" (the Provision). Employees were given the Agreement to sign with their new hire paperwork, which included documentation such as federal and state tax forms and other forms of that nature.

¶3 The Provision prohibited Employees from communicating with current Quicken Loans employees, as well as current employees of any of Quicken Loans' forty associated entities, for two years. The Provision also prohibited Employees from communicating with any former employees of those forty entities for twelve months after the former employees' employment terminated. Finally, the Agreement contained a provision stating, "This Agreement shall be construed in accordance with the laws of the State of Michigan."

¶4 Quicken Loans, a Michigan corporation, is a national company that provides mortgage loans to customers in all fifty states. Quicken Loans is a "full-service mortgage banking/personal finance company engaged in originating, closing, funding, servicing and marketing residential mortgage loans and consumer loans through various business channels."

¶5 Quicken Loans trains newly hired mortgage bankers to ensure their bankers have the proper knowledge and licensing requirements to sell mortgages. The training program includes both on-the-job training phases that employees must complete as well as an initial eight weeks of classroom training.[2] Quicken Loans constantly has new employees starting the training program. Therefore, it does not replace individual employees as they leave, but always has a pipeline of new mortgage bankers entering the various phases of training. Although Quicken Loans has stated that it takes approximately nine months for a new hire to become productive, that time frame varies depending on experience. Quicken Loans paid the costs and fees associated with preparing Employees to take both federal and state licensing exams while employed at Quicken. Moreover, Quicken Loans paid an additional incentive of $1000 per license, up to $10,000, for each state license its employees acquired.

¶6 In its underlying complaint, Quicken Loans alleged, among other things, that Employees violated the Provision by communicating

---

[2] The eight-week classroom training program has since been reduced to six weeks.

employment opportunities at loanDepot with other Quicken Loans employees. Quicken Loans sought injunctive relief and monetary damages for the alleged breaches of the Provision.

¶7            Employees filed a motion to dismiss, arguing that the Provision was unreasonable and unenforceable as a matter of law. Subsequently, loanDepot filed a motion to intervene, and Quicken Loans requested that the trial court grant the motion. After the trial court granted the motion to intervene, loanDepot joined Employees' motion to dismiss. The trial court denied the joint motion to dismiss.

¶8            After conducting discovery, Employees joined loanDepot's motion for summary judgment and individually filed separate statements of facts supporting the motion as the allegations related to each employee's involvement. The trial court granted Defendants' motions for summary judgment. The trial court found that the restrictive covenants at issue were "overbroad and unreasonably restrictive on the employee." The trial court further noted that Quicken Loans failed to meet its burden of proof "establishing a legitimate business interest in these provisions as written." The trial court also declined to amend the Provision as written to create enforceable ones, holding that the Provision was not severable and was intertwined "with an integral part of overbroad covenants that are unenforceable as a matter of law."

¶9            As the prevailing parties, the Employees and loanDepot applied to recover their costs and attorney fees. Although Quicken Loans argued that various individual defendants and loanDepot were not entitled to attorney fees, the trial court awarded Employees and loanDepot what it determined to be reasonable attorney fees and costs. Finally, the trial court found that "[w]hile loanDepot neither asserted nor defended a direct claim, [Quicken Loans] – which initiated the lawsuit that prompted loanDepot's intervention – was obligated to pay loanDepot's costs as a successful party under [Arizona Revised Statutes (A.R.S.) section 12-341.]"

¶10           Quicken Loans timely appealed. We have jurisdiction to decide this appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 12-120.21.A.1 (2003), and -2101.A.1 (Supp. 2013).[3]

---

[3]     We cite to the current version of the applicable statutes when no material revisions have since occurred.

## DISCUSSION

I.      Non-Contact Provision

     A.      Applicable Law

¶11     The Agreement contained a choice-of-law provision selecting Michigan law as the applicable law.  Assuming without deciding that Michigan law applies, we hold that the Provision is overbroad and unenforceable.[4]

     B.      Standard of Review

¶12     We review the trial court's grant of a summary judgment motion de novo.  *Kosman v. State*, 199 Ariz. 184, 185, ¶ 5, 16 P.3d 211, 212 (App. 2000).  In our review, we determine "whether genuine issues of material fact preclude summary judgment and whether the trial court properly applied the law." *Id.*

¶13     In granting summary judgment in favor of Defendants, the trial court found that the Agreement was unenforceable as a matter of law because the Provision "[was] overbroad with respect to who can be contacted, the subject matter of the communications, and the [two-]year length of time."  We agree.

     C.      The Provision is Unreasonable and Therefore Unenforceable as a Matter of Law

¶14     In its reply brief, Quicken Loans argues that the Agreement is reasonable and enforceable under Michigan law when blue-penciled to

---

[4]     Arizona has a long-standing policy precluding courts from rewriting unenforceable, overbroad restrictive covenants to create new, enforceable restrictive covenants. *See Orca Commc'ns Unlimited, LLC v. Noder*, 233 Ariz. 411, 418, ¶ 23, 314 P.3d 89, 96 (App. 2013); *see also Valley Med. Specialists v. Farber*, 194 Ariz. 363, 372, ¶ 31, 982 P.2d 1277, 1286 (1999) ("the court cannot create a new agreement for the parties to uphold the contract"); *Olliver/Pilcher Ins., Inc. v. Daniels*, 148 Ariz. 530, 533 P.2d 1218, 1221 (1986) ("Generally, courts do not rewrite contracts for parties."). Because of this policy, under Arizona law, the Provision would be unenforceable.

remove various grammatically severable clauses, resulting in the following restrictive covenant:

> 2.    You agree that for a period of 2 years after your termination, resignation, or separation of the employment relationship for any reason, you shall not, directly or indirectly (whether on your own behalf, working with others, or on behalf of any other person, business or entity):
>
> (a)    "Communicate" (as defined in Attachment A) or attempt to Communicate with any person employed by or under contract with [Quicken Loans] to in any way terminate or change his or her employment relationship with [Quicken Loans]; and/or
>
> (b)    hire, attempt to hire, employ, offer employment to, assist in offering employment to or solicit for purposes of employing or obtaining the services of (through any IRS-W2, IRS-1099, staffing company, employee leasing, partnership, company affiliation or other arrangement) any person employed by or under contract with [Quicken Loans].
>
> **F.    "Communicate"** -- For purposes of this Agreement, "Communicate" includes, but is not limited to, any contact, written or oral communication, statements or dialogue with a person through any form of communication (whether initiated by you or by any other person) in which any part of the contact, communication, statement or dialogue, directly or indirectly:  (c) suggests, asks or induces a person to:  (iii) conduct business related to Mortgage-Related Products or Services with another person, business or enterprise; or (v) change or end their employment or business relationship with [Quicken Loans].  To "communicate" includes assisting or working with others, directly and indirectly, in conducting the foregoing activities.

¶15        Under Michigan law, restrictive covenants are enforceable as long as they are reasonable. *See Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 506, 741 N.W.2d 539, 545 (2007).  Reasonableness, however, is a fact-intensive inquiry which requires our evaluation of the totality of the circumstances surrounding the agreement. *See Cuddington v. United Health Servs., Inc.*, 298 Mich. App. 264, 274, 826 N.W.2d 519, 524 (2012).  As the party seeking enforcement, Quicken Loans bears the burden of

demonstrating the validity, and thus enforceability, of the Provision. *See Coates*, 276 Mich. App. at 508, 741 N.W.2d at 545.

**¶16**      A restrictive covenant must (1) be reasonable as far as the restrictive covenant's temporal duration, geographical scope, and the type of employment or line of business limited by the agreement; (2) be limited to protecting an employer's reasonable competitive business interest; and (3) be reasonable as between the parties, and "it must not be . . . injurious to the public." *See St. Clair Med., P.C. v. Borgiel*, 270 Mich. App. 260, 266, 269-70, 715 N.W.2d 914, 919, 920-21 (2006); *see also Coates*, 276 Mich. App. at 506-07, 826 N.W.2d at 545. "To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement in order to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited." *St. Clair Med., P.C.*, 270 Mich. App. at 265, 715 N.W.2d at 918 (quoting Mich. Comp. Laws § 445.774a (West 2013)). However, "courts are not to rewrite the express terms of contracts." *McDonald v. Farm Bureau Ins. Co.*, 480 Mich. 191, 199-200, 747 N.W.2d 811, 817 (2008).

**¶17**      "With respect to duration, Michigan courts have not provided any bright line rules. Rather they have upheld [restrictive covenants] covering time periods of six months to three years." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 547 (6th Cir. 2007) (collecting cases) (internal quotation marks omitted). Nonetheless, we find the Provision's two-year time period is unreasonable because it is not an attempt to protect Quicken Loans' proprietary information, it is an attempt, rather, to preclude Employees from using the skills and knowledge learned at Quicken Loans about the mortgage industry. Although longer provisions have been approved, these longer periods are generally limited to situations where the restrictive covenant was designed to protect proprietary or confidential information the employee learned in the course of employment about the employer or its customers but it cannot "prohibit the employee from using general knowledge or skill." *See Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 276 Mich. App. 146, 158, 742 N.W.2d 409, 418 (2007). When an employee's knowledge of proprietary information is not at issue, courts are more likely to enforce a restriction twelve months or less in duration. *See, e.g., Coates*, 276 Mich. App. at 508, 741 N.W.2d at 546 (enforcing a noncompetition clause that applied for one year and applied to competitors within 100 miles).

**¶18**      Furthermore, the Provision's two-year preclusion from communication between employees and former employees of Quicken

7

Loans is unreasonable because it exceeds that which is necessary to protect Quicken Loans' reasonable competitive business interests. *See id.* (holding that a competitive business interest sufficient to justify imposing a restrictive covenant must be "greater than merely preventing competition."). Quicken Loans proffers that a two-year requirement forbidding communication between employees is reasonable to protect its investment in the time it took to train new employees. Although Quicken Loans does invest time and money to ensure that its bankers have the proper knowledge and licenses to sell mortgages, the classroom training program that Employees went through was only eight (now six) weeks long. Moreover, most Quicken Loans employees become profitable within months of completing this training and beginning to solicit clients.

**¶19** With regards to competitive business interests, a reasonable restrictive covenant will protect "against the employee's gaining some unfair advantage in competition with the employer but not prohibit the employee from using general knowledge or skill." *Id.* at 508, 741 N.W.2d at 545. An employer cannot prevent an employee from using his knowledge and skills gained from employer training – even if the on-the-job training was "extensive and costly" – by enforcing a restrictive covenant. *See Follmer, Rudzewicz & Co., P.C. v. Kosco*, 420 Mich. 394, 402 n.4, 362 N.W.2d 676, 680 n.4 (1984). The Provision's two-year duration is unreasonable because training is not a reasonable competitive business interest that justifies enforcement of a restrictive covenant, especially a covenant that exceeds the time it took Quicken Loans to train the Employees. *See id*. Therefore, Quicken Loans failed to articulate a reasonable competitive business interest that would justify imposition of a restrictive covenant that precludes former employees from communicating with current employees for two years.

**¶20** Quicken Loans also contends that the Provision protects the confidential and proprietary information it shares with its employees through training materials and client information from leaving Quicken Loans. Quicken Loans asserts that the Provision protects the employees' future use of the benefits from its marketing efforts and client relationships that employees received while at Quicken Loans. We are not persuaded. The Provision is not aimed solely at limiting employees from communicating with former employees about new opportunities within the mortgage industry. It also forbids current and former employees from speaking about any job opportunities -- even if those opportunities have nothing to do with the mortgage-related industry and even if those employees worked in another Quicken Loans entity unrelated to mortgages. Accordingly, the Provision restricts employee communication

regarding issues that are not merely proprietary customer or company information. *See id.* at 407-08, 362 N.W.2d at 682-83 ("To the extent such an agreement provides reasonable protection for the confidential information of the employer, it does not violate the statute and is enforceable. To the extent it goes beyond what is reasonably necessary for the protection of confidential information, it is unenforceable. The courts thus must scrutinize such agreements and enforce them only to the extent they are reasonable. . . . An agreement that unduly limits a former employee's freedom to go into business for himself or another . . . is unreasonable and hence unenforceable.").

**¶21** Although Mich. Comp. Laws § 445.774a(1) permits a court to limit an unreasonable restrictive covenant to render it reasonable in light of the circumstances, Michigan law does not permit courts to rewrite the express terms of a contract. *See McDonald*, 480 Mich. at 199-200, 747 N.W.2d at 817. To make this two-year duration term reasonable, we would have to rewrite this term of the Provision. Therefore, the Provision is unreasonable and unenforceable as a matter of law, because: (1) its temporal duration term exceeds that which is necessary to protect a legitimate competitive business interest; (2) it precludes employees from using their basic knowledge or skills in the mortgage-related industry; and (3) it attempts to limit current and former employees from discussing employment that is not mortgage related. Accordingly, we need not address whether the geographical scope is reasonable or whether the Provision is "injurious to the public." *See id.*; *see also St. Clair Med., P.C.*, 270 Mich. App. at 266, 715 N.W.2d at 919.

II.     Attorney Fees

**¶22** The trial court awarded attorney fees and costs Defendants as the prevailing parties pursuant to A.R.S. § 12-341.01. On appeal, Quicken Loans objects to this award. The award of attorney fees is within the sound discretion of the trial court. *See, e.g.*, *Spector v. Spector*, 17 Ariz. App. 221, 230, 496 P.2d 864, 873 (App. 1972). "We view the facts in a light most favorable to upholding the trial court's ruling." *See Hammoudea v. Jada*, 222 Ariz. 570, ¶ 2, 218 P.3d 1027, 1028 (App. 2009). We will not reverse such an award absent an abuse of that discretion. *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18, 99 P.3d 1030, 1035 (App. 2004).

A.     Evidentiary Hearing

**¶23** As a preliminary matter, Quicken Loans appeals the trial court's order denying its motion for an evidentiary hearing regarding

Employees' application for attorney fees. Under Arizona Rule of Civil Procedure 54(g)(3), a trial court, in its discretion, may conduct a hearing to determine the contested issues when an application for attorney fees is contested. *See* Ariz. R. Civ. P. 54(g)(3) (2014).

**¶24** Quicken Loans has not indicated what information it would have presented at a hearing that was not presented in its objection to the award of attorney fees. Also, to the extent that Quicken Loans wanted to present evidence of who was paying Employees' attorney fees, the Employees do not contest that loanDepot is paying their fees. For these reasons, the trial court did not abuse its discretion by declining to hold an evidentiary hearing.

        B.     Employees' Attorney Fees

**¶25** Quicken Loans challenges the trial court's award of attorney fees to various individual employees based on the theory that Employees' fees were paid by loanDepot. In Arizona, a successful party in a contract action may recover reasonable attorney fees pursuant to A.R.S. § 12-341.01 provided the successful party can demonstrate a genuine obligation to pay fees. *See Alano Club 12, Inc. v. Hibbs*, 150 Ariz. 428, 434, 724 P.2d 47, 53 (App. 1986) (holding that the trial court should have made the successful parties enter facts into the record that they were obligated to pay fees before attorney fees were awarded). Here, Employees entered affidavits into the record demonstrating that they agreed to pay the legal fees associated with the cost of their defense. Therefore, Employees appropriately demonstrated to the trial court, a genuine obligation for their legal fees to be paid, regardless of *who* subsequently paid the fees. *See, e.g., Orfaly*, 209 Ariz. at 267, ¶ 27, 99 P.3d at 1037 (noting "that some portions of appellees' attorney fee expense was covered by insurance does not preclude the fees awards to appellees"). Thus, the trial court did not err in ordering Quicken Loans to pay Employees' legal fees and costs related to this action.

        C.     loanDepot's Attorney Fees

**¶26** Quicken Loans also argues that the trial court's award of attorney fees to loanDepot, as Intervenor, was error because (1) loanDepot failed to assert a claim for attorney fees in a pleading and was thus precluded from pursuing fees and (2) loanDepot was not a "successful party." Quicken Loans argues that pursuant to *King v. Titsworth*, 221 Ariz. 597, 212 P.3d 935 (App. 2009), the trial court could not award attorney fees because the request for attorney fees was not made in the pleadings listed

in Rule 7(a). However, in *King*, the request for attorney fees was made in a motion, after a decision on the merits. *Id.* at ¶ 12. In this case, however, loanDepot never filed an answer; instead the request for attorney fees was made in both the motion to dismiss and the motion for summary judgment.

**¶27**        Furthermore, loanDepot was a "successful party" in this action. To illustrate, loanDepot had a vested interest in the outcome of this action because Quicken Loans initiated the action in order to remove a number of loanDepot's employees from its employ. When Employees prevailed on their claims and were able to remain at loanDepot, loanDepot's interests were protected and loanDepot was a successful party. Therefore, the trial court did not abuse its discretion in awarding attorney fees to loanDepot.

**¶28**        Finding no abuse of discretion here, we affirm the trial court's award of attorney fees to the Defendants.

III.        Request for Attorney Fees on Appeal

**¶29**        Defendants request attorney fees incurred on appeal pursuant to ARCAP 21 and A.R.S. § 12-3410.01. In our discretion, we decline to award attorney fees. However, as the prevailing parties, we award the costs of this appeal to Defendants upon compliance with ARCAP 21.

**CONCLUSION**

**¶30**        We affirm the orders and judgments of the trial court.



Ruth A. Willingham · Clerk of the Court
FILED: MJT